IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GREGORY SLATE,**<br><br>               Plaintiff,<br><br>vs.<br><br>**AMERICAN BROADCASTING COMPANIES, INC., ET AL.,**<br><br>               Defendants. | Civil Action No. 09-1761 (BAH) |

**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
ABC NEWS INTERACTIVE'S ANSWERS TO INTERROGATORIES**

Defendant ABC News Interactive, Inc. ("ANI") hereby opposes Plaintiff Gregory Slate's Motion to Compel Defendant ABC News Interactive's Answers to Second Set of Interrogatories (Dkt. 35), and states as follows:

**FACTS**

Plaintiff's filing of the instant motion to compel follows a familiar pattern – reflecting far more interest in filing a motion to compel than in advancing the course of discovery.

Plaintiff's second set of interrogatories to ANI were served by mail on January 27, 2011, making responses due to be served on March 1, 2011. On February 27, 2011, a Sunday, Plaintiff began sending e-mails to Defendant's counsel claiming "defendant's answers are now due. Please furnish defendants' answers immediately." *See* Declaration of Nathan E. Siegel (Dkt. 42-1) ("Siegel Decl.") Exhibit 10 (Dkt. 42-11). Again the next morning, on February 28, Plaintiff began the day e-mailing at 9:21 a.m., "Please furnish defendants' answers immediately." *Id*. Ex. 11 (Dkt. 42-12). Plaintiff then followed at 1:17 pm., demanding a meet and confer phone call because "I am considering filing a motion to compel." *Id*. Ex. 12 (Dkt. 42-13).

1

On March 1, the date responses were due, Defendants served responses by mail and also e-mailed a courtesy copy to Plaintiff at 8:05 p.m. *Id.* Ex. 13 (Dkt. 42-14). Five minutes later, Plaintiff sent an e-mail stating "Be advised I intend to file a motion to compel interrogatories. When are you available for a 7m confer?" *Id.* At 8:15 a.m. the next morning, Slate requested a telephone conference at 10:30 a.m., and repeated the demand at 9:41 a.m., stating: "please advise immediately when you are available to confer." *Id.* Ex. 14 (Dkt. 42-15).

Defendants acceded to his request and did confer, after which Plaintiff sent a follow-up letter at 1:11 p.m. on March 2 asking for further clarification of Defendants' position. Without waiting for a response, he filed this motion to compel the next day. Dkt. 25. Defendants' counsel was in the process of drafting a detailed response to that letter when the motion to compel was filed.

Nonetheless, prior to serving this Opposition, Defendants proposed to Plaintiff that the parties resolve this aspect of their dispute by agreeing that he would withdraw these Interrogatories to ANI and this motion to compel, and instead inform the Court that going forward the parties agreed that each side may serve up to 10 additional interrogatories during the liability phase of discovery (once the Court authorizes further discovery) – and no more. Siegel Decl. Ex. 15 (Dkt. 42-16). Defendants even agreed that if Plaintiff wished to serve the identical 10 interrogatories on all current defendants (or vice-versa), he could do so. *Id.* All parties would continue to have all rights to object to any interrogator(ies) on any other ground, including the ground that properly counted there were more than ten. *Id.* Plaintiff declined the proposal. *Id.* Ex. 16 (Dkt. 42-17).

## ARGUMENT

**I.   DEFENDANT ANI DOES NOT HAVE ANY INFORMATION RESPONSIVE TO THE INTERROGATORIES.**

While ANI separately objects to these interrogatories on the grounds that they exceed the requisite limit, for the several reasons discussed more fully below, the resolution of that issue is really beside the point.  The reality is that this ANI has, in effect, explained how it would respond to the Interrogatories with its first general objection, which Plaintiff's Motion to Compel ignores.  ANI objected on the grounds that the corporate entity to which these Interrogatories are directed, ABC News Interactive, Inc., is not the correct party that Plaintiff claims it to be.  In essence, this is merely a technical way of stating that this Defendant would lack the knowledge to respond to the Interrogatories.  To explain this response, it is necessary to provide the Court with some additional background to the history of this case.

When Plaintiff initially filed this lawsuit through his former counsel, the Complaint identified three defendants: (1) ABC News, Inc., (2) ABC News Interactive Inc., and (3) Disney/ABC International Television, Inc. Dkt. 1 ("Complaint").  The Complaint indicated that Plaintiff was trying to sue three ABC-related corporate entities:  (1) the primary entity responsible for the producing and broadcasting the 20/20 program at issue (Complaint at ¶ 2) (which was named "ABC News, Inc."), (2) an entity responsible for "host[ing] content from the news program 20/20 on the ABC News website" (*Id*. at ¶ 3) (named as "ABC News Interactive, Inc."), and (3) an entity responsible for distributing 20/20 programs internationally (*Id*. at ¶ 4) (Disney/ABC International Television, Inc.").  Upon reviewing the Complaint, Defendants' counsel noted that it named the primary entity responsible for producing and broadcasting 20/20 incorrectly – it should have been "American Broadcasting Companies, Inc." rather than "ABC News, Inc."

It has always been Defendants' view that naming these multiple parties is unnecessary under copyright law because the corporate entity that operates ABC News and that was responsible for the content of 20/20 would, if infringement occurred, be responsible for any alleged damages in any event – and the Complaint affirmatively alleges as such.  While Defendants' counsel could have responded to Complaint by essentially denying everything on the grounds that none of the named parties had produced the 20/20 program, Defendants instead *volunteered* the correct information in their Answer as to the entity responsible for producing the 20/20 program, and then proceeded to respond to the Complaint as if that entity had actually been sued. Dkt. 2 at ¶ 2.  As a result, the parties agreed that Plaintiff would file an Amended Complaint changing the name of that party, and that Defendants would not need to file a new Answer because its original Answer would be deemed to be responsive to the Amended Complaint.  *See generally* Dkt. 9.

Subsequently, Plaintiff propounded 13 interrogatories on each of the corporate Defendants.  As Plaintiff notes, the interrogatories were the same – which merely reinforces the point that there is no need to multiply the number of defendants.  By that point, Defendants had determined that a second Defendant, ANI, had also been improperly sued because it is not the entity that might be alleged to host content on the ABC News website.  As a result, once again Defendants volunteered this fact in response to the Interrogatories, and again to move the case along voluntarily proceeded to answer them on behalf of what would be a correct entity – whose answers all simply referred to the Answers provided by American Broadcasting Companies, Inc,, the primary defendant. Dkt. 35-5 at 2.  Specifically, Defendants first objection to those interrogatories stated as follows:

> 1. Defendant objects to the Interrogatories to the extent they are premised upon allegations that Defendant "hosts content from the news program

4

> '20/20'" at http://abcnews.go.com or is otherwise responsible for the content published or "web-cast" on that Internet site. *See* Am. Compl. ¶¶ 3, 27. The corporate entity that is responsible for such content is ABC News/Starwave Partners, a New York general partnership doing business as "ABC News Internet Ventures." For purposes of these responses, Defendant will interpret the Requests as if they were directed to ABC News Internet Ventures.

*Id.* However, Plaintiff never sought to amend the complaint to change this party, as he had done previously.

Subsequently, as has been briefed and has been the subject of two status conferences, the course of litigation changed. After Plaintiff's former counsel withdrew and Plaintiff began to proceed *pro se*, the spirit in which this litigation had previously been conducted, and which caused Defendants' counsel to ignore such deficiencies even when it was not required to, changed completely.

On January 27, Plaintiff served what purport to be nine interrogatories (though, as discussed below, their real number is certainly larger), this time only on ANI. This was a curious choice – not only because Plaintiff had been informed months before that it was not a proper defendant, but because the interrogatory responses it had provided previously on behalf of the proper entity had referred back to the answers given by American Broadcasting Companies, Inc., the primary defendant. *See generally* Dkt. 35-5. Moreover, these new interrogatories have nothing to do with web issues, but rather address the broader defenses in the case.

As a result, almost a year after informing Plaintiff that he was pursuing the wrong entity, and pointing him to the corporate entity that would potentially have knowledge regarding the allegations in the Amended Complaint about hosting websites, ANI declined to go through the same exercise for a third time and simply objected to these interrogatories on that basis. Even so, ANI's first objection to these nine interrogatories continued to identify the entity ANI believes would be the correct one – called ABC News/Starwave Partners. Dkt. 35-3 at 2.

There is also no question that Plaintiff understood this objection. Just five minutes after undersigned counsel e-mailed Plaintiff these interrogatory responses, Plaintiff e-mailed back stating, "I intend to file for leave for an amended complaint to add ABC News/Starwave Partners do you consent?" Siegel Decl. Ex. 13 (Dkt. 42-14). Defendants' counsel responded that it would consent, provided that Plaintiff would agree to the same terms the parties had agreed on for the first Amended Complaint – i.e., the amendment would simply substitute parties, and no new Answer would be required. *Id.* Ex. 17 (Dkt. 42-18). Plaintiff has, to date, refused to agree to this proposal.

In short, Plaintiff is seeking to compel answers to interrogatories, the answers to which would in any event be "I don't know" because they are directed to the wrong entity – an entity that informed Plaintiff it was the wrong defendant in early 2010. Plaintiff simply has no basis at all to demand anything more, and his motion does not purport to provide any. It should therefore be denied on this ground alone.

## II.   THE INTERROGATORIES EXCEED THE NUMBER PERMITTED FOR TWO INDEPENDENT REASONS.

### A.   The Operative Scheduling Order Limited Each Side to 25 Interrogatories and this Court's New Scheduling Order Should Similarly Do So.

Rule 33(a)(1) of the Federal Rules of Civil Procedure permits each party to serve up to 25 interrogatories on any other party. However, Local Civil Rule 26.2(b) specifically provides that a scheduling order may vary the provisions of that rule, and if so the scheduling order will govern. Plainly, these parties disagree as to whether Judge Sullivan's Order did so. At this juncture in this case, there are really two questions before the Court. The first question is simply whether a reasonable dispute exists over the meaning of Judge Sullivan's Order; Defendants believe that it does, and indeed Defendants believe that a "per side" reading of that Order is most logical from

6

the text of the Order and the context of this litigation.  The second, and more important question, is how to address this issue going forward with an amended scheduling order – the answer to which as a practical matter will likely moot this dispute over the number of permissible interrogatories going forward.  Defendants therefore address both issues.

With respect to Judge Sullivan's Order, it stated that "Each party is limited to 25 interrogatories and 10 depositions." Dkt. 10 at 2.  Plaintiff argues that this was "obviously" intended merely to restate Rule 33(a)(1).  But the Order simply does not say that, and moreover, the logic of Plaintiff's argument fails to account for the fact that Judge Sullivan used the same language with respect to both interrogatories and depositions even though the presumptive federal rules differ for the latter – since depositions are presumptively limited to 10 *per side*.  Thus, Plaintiff's logic would suggest that Defendants are entitled to take up to 30 depositions between them, while Plaintiff is limited to 10, which Defendants do not believe Judge Sullivan intended.

Rather, Defendants think the intent was to limit each side of the case with respect to both interrogatories and depositions, which is commonly done in multi-party cases of this nature.  Indeed, Rule 33(a)(1)'s presumption is most applicable where there are differently situated multiple parties, often separately represented, and it would work real prejudice to substantially limit each party's ability to submit separate interrogatories to the other.  8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D § 2168.1 (3d ed.) ("WRIGHT & MILLER").  However, a leading treatise notes that "in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation," such as "[i]n instances of legally related parties such as a parent corporation and its subsidiary." *Id.*; *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399

7

(S.D.N.Y. 2006) (citing WRIGHT & MILLER as "[a] more sensible approach"); *see also, e.g.*, *Vinton v. Adam Aircraft Indus.*, 232 F.R.D. 650, 664 (D.Colo. 2005) ("alter ego[]" defendants properly treated as a "single, unified entity" and limited to 25 interrogatories). That is precisely the situation here, where Defendants are all part of the same corporate family, represented by the same counsel, and where the underlying conduct at issue all arises from interactions between 20/20 employees of the principal defendant – American Broadcasting Companies, Inc. – and Plaintiff.[1]

      Plaintiff also argues that even if the limit were 25 per side, he has not exceeded it because he previously served 13 similar interrogatories on each party. This argument simply does not make sense – the limit is either 25 per side or it is not, but a choice to serve similar interrogatories separately on each party does not somehow change the total number served. Indeed, even Plaintiff's claims about how many interrogatories he may serve going forward – 36 – concedes that he has already served 39. Moreover, Plaintiff's argument might have more force if he had served these same nine Second Interrogatories on all three defendants. However he did not, and his response makes clear that in his view he has the right to serve 12 separate interrogatories on each Defendant – for a total of 36 more distinct interrogatories. ANI does not believe this is what Judge Sullivan's scheduling order contemplated, or what this Court should permit going forward.

---

[1] The practical results of Plaintiff's position are illustrated by the fact that Plaintiff has over the past week sent Defendants' counsel multiple e-mails asking consent to various proposals to amend the Complaint. Every proposal indicates that Plaintiff proposes to seek leave to amend not simply to substitute parties, but rather to try to add additional corporate defendants. Under Plaintiff's view of what the scheduling order should be, this would then enable him to continue to multiply interrogatories for each separate corporate entity he may ultimately succeed at adding as a defendant in this case, into the triple digits. This merely reinforces the point that there is no need to, and it would be inadvisable to, literally apply Rule 33 in this type of multi-defendant case.

Turning from Judge Sullivan's Order to the question of what a new scheduling order should provide, Defendant believes that a simple 25/10 limit per side on interrogatories and depositions is all that is necessary, and is appropriate.  8B WRIGHT & MILLER § 2168.1.  Three related corporate entities have been sued, the allegations against all of them are essentially identical, and they are all represented by the same counsel.  In such a case, a literal application of Rule 33 is much more likely to just open the door to unnecessary expansion of discovery that makes the limit of 25 essentially meaningless.  There is no apparent reason in this case to permit Plaintiff to take up to 75 interrogatories, or to permit Defendants to effectively be able to serve 75 on Plaintiff (or more, if Plaintiff succeeds in his stated intent to add additional corporate entities as defendants, *see* n. 1, *supra*) – all the more so in a case in which discovery has been bifurcated, so there will presumably be additional damages discovery permitted at that juncture.

> **B.     Even Apart from the Dispute Over the Total Number of Interrogatories Pursuant to the Scheduling Order, the Second Interrogatories Are Objectionable on Numerosity Grounds**

Even if Judge Sullivan's scheduling order literally tracked Rule 33(a)(1), which ANI does not believe that it did, ANI still objects based on numerosity.  The Second Interrogatories purport to encompass nine additional requests, most of which range from a half to a full page each, and most of which plainly constitute more than a single interrogatory.  Fed. R. Civ. P. 33(a)(1) (permitting 25 interrogatories, "including all discrete subparts"); *Willingham v. Ashcroft*, 226 F.R.D. 57, 59-60 (D.D.C. 2005) ("[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated."); *Banks v. Office of Senate Sergeant–at–Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004) (separate interrogatory begins "the moment the interrogatory introduces a new topic that is in a distinct field of inquiry").  Indeed, proportionally, these nine numbered Interrogatories

9

collectively are almost *four times* the length of the 13 interrogatories Plaintiff previously served on ANI and the other Defendants last year.

For example, numerous Interrogatories seek both answers and identification of documents – and as such presumptively count as at least two interrogatories apiece.  *See* Interrogatory Nos. 1-4, 6; *see also Smith v. Café Asia,* 256 F.R.D. 247, 254 (D.D.C. 2009) (holding that "each interrogatory that seeks identification of documents in addition to an answer will be counted as two interrogatories"); *Banks*, 222 F.R.D. at 10 ("[A] demand for information about a certain event and for the documents about it should be counted as two separate interrogatories.").  That alone makes the Interrogatories objectionable as exceeding the number permitted.  However, as in *Café Asia*, "several additional interrogatories .. should be further subdivided." 256 F.R.D. at 254.  For example, Interrogatory No. 7 asks for an enormous amount of different information ranging from Nielsen ratings to information about communications with organizations that issue journalism awards, while Interrogatory No. 8 (actually No. 9) asks for one very expansive corpus of information, and then proceeds to "conversely" request an entirely different corpus of information.  Interrogatory No. 6 does the same – first requesting payments ABC made in connection with producing the 20/20 episode at issue, then "[c]onversely" seeking information about revenues paid to ABC for advertising – two entirely different topics.[2]  Interrogatory No. 5 seeks all information about "any and every time the Footage was viewed, played, duplicated, transmitted and/or otherwise exploited or used in any way, in whole or in part, including by way of example and not limitation any time the Footage was viewed, played, duplicated, and/or otherwise exploited or used in anyway in whole or in part for editing, to prepare and/or verify any script, to screen before, during, or after production, to create a DVD, to

---

[2] The second part of Interrogatory No. 6 as well as Interrogatory No. 7 are also improper because they seek information solely related to damages during the liability phase of discovery.

resize, to screen for any department of the ABC or any other entity or individual every time," and then seeks different information relating to "the purpose, individuals involved, date, location, if it involved payments, consideration, compensation, reimbursements, credit or other benefit, whether monetary or non-monetary/in-kind, direct or indirect, indicate the amount, and describe any and all portions of the Footage involved." Clearly, the "nine" additional Interrogatories amounted to far more than 12 – even assuming Plaintiff were correct that despite the prior Scheduling Order he was entitled to serve an additional 12 requests on ANI.

Here, ANI was obligated to raise its numerosity objections as a threshold issue for the Court. Had it answered any of the Interrogatories served on January 27, 2011 despite its belief that they clearly exceeded the number permitted in this case, it could have waived its objection. *See* 8B WRIGHT & MILLER § 2168.1. ("[I]f a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest.") (citing *Allahverdi v. Regents of Univ. of N.M.*, 228 F.R.D. 696 (D.N.M. 2005)). As such, ANI raised these general objections rather than discretely object to portions of particular Interrogatories (such as those that seek only damages responses irrelevant to liability issues currently in discovery, or that are patently overbroad as not limited in time or scope).

## CONCLUSION

Plaintiff had many options reasonably available to him rather than filing a motion to compel immediately upon receipt of ANI's responses. He could have narrowed the requests, served the same questions on a proper defendant, or filed a motion to amend the complaint with consent and then re-served interrogatories (or just sought a stipulation that they would at that point be deemed served on the proper defendant). Moreover, since there is obviously a dispute between the parties over whether Plaintiff may serve any more interrogatories at all, and the

11

parties were scheduled to appear before this Court to discuss discovery procedures two days after this motion to compel was filed, Plaintiff could have waited to ask the Court to clarify that question before either filing a motion to compel or serving any additional interrogatories. Plaintiff also could have agreed to Defendant's compromise proposal to accept 10 additional interrogatories – either served on one defendant or the same 10 served on all current defendants. He did none of these things, but rather has opted to pursue yet another, likely unnecessary, discovery dispute in this case.

    Defendants respectfully request that Plaintiff's Motion to Compel be denied.

Dated:  March 16, 2011        Respectfully submitted,

By:   /s/ Chad R. Bowman
      Nathan E. Siegel, (D.C. Bar No. 446253)
      Chad R. Bowman, (D.C. Bar No. 484150)

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
1050 Seventeenth Street, N.W., Suite 800
Washington, D.C.  20036-5514
Telephone: (202) 508-1100
Facsimile: (202) 861-9888
Email: nsiegel@lskslaw.com
Email: cbowman@lskslaw.com