IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GREGORY SLATE,**<br><br>                        Plaintiff,<br><br>      vs.<br><br>**AMERICAN BROADCASTING<br>COMPANIES, INC., ET AL.,**<br><br>                        Defendants. | Civil Action No. 09-1761 (BAH/DAR) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
THIRD MOTION FOR PROTECTIVE ORDER**

ABC filed a motion for a protective order concerning a Rule 30(b)(6) deposition e-mailed to its counsel on three grounds: (1) the notice was untimely and was never even served; (2) the history of Plaintiff's efforts to set depositions and other related conduct warranted this Court's setting clear ground rules for depositions before any took place; and (3) the deposition notice is wholly overbroad and burdensome, demanding numerous categories of testimony that have no relevance to this case or to this phase of discovery. Each of these grounds are well-founded.

**RESPONSE TO PLAINTIFF'S ASSERTIONS OF FACT**

Plantiff's Opposition is premised upon a presentation of facts that is demonstrably untrue, so ABC initially will respond to those facts.

First, Plaintiff's presentation implies that there could be no issue of timing for the deposition because the date was never changed, only the location was. He claims the deposition was originally noticed for March 11 on March 1, and was then "only amended at the request of Defendants to change the location to one Defendants indicated they would prefer." Pl. Opp. at 2.

1

This is simply false. Rather, the deposition was originally noticed for March 11, but then the next day Plaintiff served a subsequent notice unilaterally changing the date to March 9. Dkt. 39-18. A couple of days thereafter, undersigned counsel became aware that the noticed location for the deposition was in fact a partially boarded up, dilapidated row house, and objected. An amended 30(b)(6) notice – returning the deposition date to March 11, changing the location, and adding deposition topics – was not e-mailed until *March 7*, and is the notice at issue here. Dkt. 39-5.

Plaintiff claims that Defendants are using "dated photographs of Plaintiff's house, taken years before he even owned it" to "wrongly discredit and malign him." Pl. Opp. at 2. This is also wholly false. As Mr. Bowman's Declaration states, the picture of the house that appears in ABC's motion was taken on Monday, March 7 (and a similar picture appears on Google Street View). Bowman Decl. (Dkt. 39-2) ¶ 3; *see also* Dkt. 39-4. Moreover, this is not "Plaintiff's house" – Plaintiff has testified that he resides in Baltimore, and claimed in e-mails before Defendants' counsel saw the house that no one resides there but rather it is a place where he "conducts business, holds meetings, and stores documents." Dkt. 39-3.

Moreover, Plaintiff tries to avoid the reality that he changed the date of the deposition to March 11 on just a few days notice by claiming that after the Court changed the date of the scheduling conference, "the parties agreed that the deposition would proceed as originally noticed on the 11th." Pl. Opp. at 5. Plaintiff provides no support for this claim, which again is simply false. Rather, the e-mails make clear that to the contrary Plaintiff never committed to any agreement to changing the date despite e-mails from ABC's counsel asking what his intentions were. Instead, the record ABC furnished in support of its motion for a protective order makes clear that only after Plaintiff was in essence caught – *i.e.*, only after ABC's counsel informed

him on Monday, March 7 that they had discovered where he was trying to hold the deposition and would object to its proceeding unless he agreed to certain conditions (which he did not) – did he then unilaterally try to again change both the date (to March 11) and the location (presumably to the room pictured on page 2 of Plaintiff's opposition) by e-mailing yet another notice at 5 p.m. that evening.  Moreover, Plaintiff's Opposition never addresses the fact that the new notice was also substantively different than the previous ones because it added new topics for examination that had never previously appeared on any notice.

## ARGUMENT

**I.    THE NOTICE WAS UNTIMELY.**

There can be no serious dispute that the notice at issue in the Order – Plaintiff's third notice in just one week – was untimely.  The record makes clear that Plaintiff, having served a notice for March 9, then played fast-and-loose by refusing to confirm any aspect of any potential changes to this deposition (the date, location, method of recording, etc.) until unilaterally e-mailing a new notice three and a half days before a new date.  Indeed, to this date the notice that is the subject of this Motion was never even properly served at all (it was just e-mailed – plaintiff's certificate of service represents that it was hand-served, but it never was, *see* Dkt. 39-2 at ¶ 4).  The Notice also included topics that had never before been included in any of the multiple 30(b)(6) deposition notices Plaintiff has served.  That ground alone would render the notice untimely, especially for a deposition that requires a party to prepare a witness on topics for which the witness may lack personal knowledge.

Plaintiff's conduct with respect to this notice also does not arise out of a vacuum, but rather was part of a repeated pattern of treating counsel and witnesses with total disregard with respect to setting depositions.  On multiple occasions Plaintiff has unilaterally served Rule

30(b)(6) notices without inquiring about the availability of counsel and/or witnesses, even to the point of previously refusing to change a deposition date when the proferred witness was going to have surgery. *See generally* Dkt. 29-1. This conduct is wholly unreasonable, particularly given that Plaintiff knows ABC's witness would need to travel from New York, it takes time to prepare a witness who is a corporate designee, and ABC's journalists involved in this case should not be in a position of being constantly held in limbo wondering whether or when Plaintiff might unilaterally change the dates and other terms of depositions on short notice. ABC therefore believes it is important to make clear that this kind of conduct will not be tolerated, and all parties should be expected to extend the reasonable courtesies normally afforded with respect to setting deposition dates. *E.g.*, *Jackson v. District of Columbia*, Civ. A. No. 86-2201, 1987 WL 13962, at *1 (D.D.C. July 6, 1987) ("the court expects that [the parties] will cooperate reasonably in scheduling and completing discovery"). Those courtesies could of course include mutually agreeing to switch depositions or deposition dates on short notice, where that happens by good-faith agreement. But that clearly is not what happened here.

**II.  ABC'S CONCERNS WITH RESPECT TO SEEKING GROUND RULES FOR DEPOSITIONS ARE WELL-FOUNDED.**

Regardless of timing, when ABC filed its motion for a protective order it had every reason to be concerned that Plaintiff intended to conduct this deposition in a manner that would be "unreasonable, oppressive annoying, or embarrassing," particularly with respect to harassing witnesses. Pl. Opp. at 5. At the only previous deposition in this case, Plaintiff had been ordered to cease improper videotaping after falsely claiming there had been a prior agreement to allow him to tape. *See generally* Dkt. 37 at 3. For the Rule 30(b)(6) deposition, Plaintiff then tried to lure ABC's witness to a boarded up house by misrepresenting what the location was – something he continues to do even to this Court. Plaintiff had also persistently refused to provide basic,

4

routine information as to who would be videotaping and even declined to respond to queries about whether any surreptitious recording would be taking place. This conduct took place against the backdrop of other conduct in this case that is set forth in ABC's Motion and will not be repeated here, such as sending multiple subpoenas to potential witnesses for highly personal information, even in the face of a restraining order with respect to one of them.

For all these reasons, ABC's motion to quash this deposition at least until the Court sets clear ground rules for depositions is well-founded. Indeed, it was for essentially all of these reasons that Judge Howell, after expressing concern with the nature of the subpoenas that Plaintiff had issued, ordered on February 25 that no new subpoenas or deposition notices be served until this Court had an opportunity to establish discovery procedures – a highly unusual order to make at the outset of discovery. *See* 2/25/11 Minute Order ("The parties will not issue any subpoena or notice any deposition until a Magistrate Judge has been assigned to the case and addressed procedures for additional discovery. The parties must each submit, by March 4, 2011, a list of all subpoenas that have been issued and all depositions that have been noticed to date, with a brief description of the relevance to this matter of each."). ABC's Motion at a minimum simply seeks to extend that stay to this deposition notice, in light of all of Plaintiff's conduct between the parties' appearance before Judge Howell and the date this motion for a protective order was served.

### III. THE DEPOSITION NOTICE IS WHOLLY OVERBROAD AND SEEKS DISCOVERY ON NUMEROUS TOPICS THAT ARE IRRELEVANT TO THE CASE AND IMPROPER FOR A RULE 30(B)(6) DEPOSTION.

Finally, it bears mentioning that even the parties' failed efforts to agree to proceed with a Rule 30(b)(6) deposition were really only an effort to narrow and postpone, rather than resolve, their larger dispute over this deposition notice. As set forth in its Opening Memorandum (see

5

p. 24), ABC has always maintained that all the notices Plaintiff has served are enormously overbroad, most of the topics on it are irrelevant to the case, and the burden of preparing the ten or more witnesses that ABC estimates would be required to actually try to provide testimony on all of these disparate topics is wholly unreasonable. Indeed, it would in effect double the presumptive number of depositions permitted for each party. Far from ameliorating these concerns, this most recent Notice actually *adds* additional topics to the same list and would require an additional witness with specialized knowledge of that subject matter. Plaintiff's Opposition does not respond at all to these points about the broader problems with the substance of the Notice. Looking specifically at some of the topics on the Notice, referring to each by the topic number listed on the Notice, submitted as Dkt. 39-5 (Exhibit 3 of the March 9, 2011 Declaration of Chad R. Bowman accompanying this Motion):

3. This topic relates to a form filled out by an assistant producer to reimburse Plaintiff for expenses for which he did not provide any receipts. Plaintiff does not suggest that he was improperly reimbursed; testimony about polices and procedures concerning these forms has no bearing on any issue in this case.

4. ABC's mail system has no relevance to this case, and this would require an entirely separate witness solely for this topic.

5. Defendant would not object to asking witnesses questions about the budget for this particular 20/20 story at issue, but this broad topic, if relevant at all, is only relevant to damages and is therefore not a proper topic for the liability phase of discovery. Moreover, even as to damages the budget for the entire 20/20 newsmagazine over a period of 5 years would be overbroad.

6. Glenn Silber was an employee who worked for years at ABC and would have interacted with hundreds of people. It would be impossible to identify or prepare a witness to testify about the tens of thousands of "dates, times and nature of all communications between defendants and Glenn Silber." This is exactly the kind of demand for a witness with super-human memory for which Rule 30(b)(6) may not be used. *See, e.g., EEOC v. Am. Int'l Grp., Inc.*, 93 CIV 6390 (PKL) RLE, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994) ("Rule 30(b)(6) is not designed to be a memory contest. It is not reasonable to expect any individual to remember every fact in [defendant organization's] file."). For this kind of testimony, Plaintiff may simply subpoena Mr. Silber for a deposition.

7. This topic also only relates to damages.

11. Plaintiff is free to seek production of any insurance policy, which would speak for itself.  Testimony about that policy could not reasonably lead to the discovery of admissible evidence in this lawsuit, since the policy could not be admissible evidence.

12. ABC's policies for booking travel are not at issue in this case.

15. This topic also relates solely to damages.

19. This topic also relates solely to damages.

20. This topic also  relates solely to damages.

23. The technical specifications of ABC's websites and e-mail systems are not conceivably relevant to anything in this case.

25. 20/20 is a large newsmagazine with multiple employees.  The salaries of all of those employees is not conceivably relevant to anything in this case, and would be highly intrusive for every employee.  Moreover, no witness could reasonably be prepared to recall such information.

26. This is a lawsuit for copyright infringement, not defamation or negligence.  ABC's journalistic standards have no bearing on this dispute.

27. This topic could only be conceivably related to punitive damages, and is therefore premature.

28. This topic relates solely to damages, and in any event sweeps far beyond what would be relevant to ascertaining any revenue attributable to the seconds worth of video footage at issue in this case.

29. This topic has no plausible relevance.

In short, well over half of the topics on this notice are wholly improper, and Plaintiff has had numerous opportunities to narrow this notice further.  Not only has he not done so, he actually expanded it in the notice at issue here.  If this deposition is permitted to proceed, it will almost certainly open the door to 29 different motions to compel claiming that either ABC should not have objected to a particular topic and/or that any testimony provided was inadequate.  As a result, ABC respectfully submits that the Court should simply quash it given the plethora of

irrelevant and overbroad topics it contains. As the authority cited in Defendant's Motion for a Protective Order states, courts have not hesitated to quash such overbroad rule 30(b)(6) notices. *See also Brunet v. Quizno's Franchise Co.*, No. 07-cv-01717-PAB-KMT, 2008 WL 5378140, at *3 (D. Colo. Dec. 23, 2008) ("Federal courts may issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) notices."); *Sanofi-Synthelabo v. Apotex Inc.*, No. 02 Civ. 2255 (SHS), 2009 WL 5247497, at *2 (S.D.N.Y. Dec. 30, 2009) (granting motion for protective order because Rule 30(b)(6) notice to party "addresses topics that are not relevant" and "thus pose an undue burden").[1] If Plaintiff wishes to proceed with testimony pursuant to Rule 30(b)(6), he should be required to serve a Notice that is not primarily directed at irrelevant and vastly overbroad testimony.

## IV. DEFENDANTS SEEK REASONABLE RESTRICTIONS ON THE CONDUCT OF DEPOSITIONS IN THE CIRCUMSTANCES OF DISCOVERY IN THIS CASE.

Defendants raised multiple specific concerns that led to its request that videotaping of depositions be barred or, alternatively, proceed pursuant to the ground rules set forth in *Paisley Park Enterprises v. Uptown Productions*, 54 F. Supp. 2d 347 (S.D.N.Y. 1999). They included (1) past conduct involving disseminating material about through the Internet and otherwise about witnesses that has produced a restraining order in a different case; (2) all of the conduct previously discussed, such as setting depositions at a boarded up house and then misrepresenting the location; (3) refusing to consent to a protective order limiting use of videotapes of

---

[1] *Accord Lehman v. Wal-Mart*, No. 7:09CV5007, 2009 WL 4800540, at *1-2 (D. Neb. Dec. 8, 2009) (granting motion to quash 13 "topics described in the 30(b)(6) notice" as "overly broad and irrelevant"); *Ehler v. Wheaton Franciscan Med. Plan*, No. C08-2021, 2009 WL 722065, at *4 (N.D. Iowa Mar. 18, 2009) (prohibiting Rule 30(b)(6) deposition on "irrelevant" topic); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) (granting protective order and denying discovery into various "areas of inquiry requested in Plaintiffs' Rule 30(b)(6) Notice ... on the grounds that they are irrelevant to the issues of the lawsuit"); *Nat'l Australia Bank v. U.S.*, 54 Fed. Cl. 238, 240 (Fed. Cl. 2002) (quashing Rule 30(b)(6) deposition notice where "[a]dditional discovery on that [noticed] question is ... not relevant to the claim before us").

depositions to this case; (4) refusing to identify or explain who would be operating the camera; (5) improperly recording his own deposition after falsely claiming he had previously provided notice that he would; and (6) refusing to respond to questions about possible surreptitious recording of depositions, when Plaintiff has the expertise to do so and a demonstrated history of surreptitiously recording conversations, some of which were produced in discovery.

Tellingly, Plaintiff's Opposition does not answer or address of these questions at all – instead he just labels these concerns "vague and ungrounded." They are neither, but at a minimum they might be less grounded if Plaintiff were to specifically address them, which he continues not to do. Indeed, despite all of the briefing on this issue and discussion before the Court, to this day the Court has no real idea how Plaintiff would intend to go about videotaping depositions.

To the contrary, Plaintiff's Opposition only heightens these concerns. He continues to make blatantly false assertions about the house where he had noticed a deposition, claiming that the picture Defendants' showed is years old – which is simply untrue. Moreover, even though Plaintiff was specifically ordered by Judge Howell not to disseminate the videotape he recorded at his own deposition, his Opposition refers to its mere existence to make unsupported accusations about Defendants' counsel and thereby confirms that the real purpose of his recording was to have his own personal videotape of Defendants' counsel – which Judge Howell explained to him would be improper. Dkt. 37-2 at 139:1-13. Moreover, Plaintiff's persistence in trying to somehow use this tape notwithstanding Judge Howell's express instructions merely heightens Defendants concerns that any protective order limiting the dissemination of videotapes of depositions outside of depositions or the courtroom – the minimum that would be appropriate here – would be ineffective.

Plaintiff is correct that normally videotape recording of depositions is permitted under the Federal Rules, and there are advantages to such recording for purposes of trial presentation. If Plaintiff had conducted himself normally this would be an issue, but he has not. Plaintiff also misstates the case law he cites, implying that it stands for the proposition that videotaping is actually to be preferred in lieu of stenographic recording. Pl. Opp. at 6. This is simply not so – all the cases Plaintiff cites involved depositions that were stenographically recorded, and videotaping was used as an *additional* method – which is not what Plaintiff proposes to do. Indeed, as previously discussed in Defendants' motion, a videotape-only deposition is unlikely to save time or money because it would presumptively need to be transcribed anyway in order to be used in the judicial process. Fed. R. Civ. Proc. 32(c).

However, Defendants note that Plaintiff does cite favorably to the *Paisley* case Defendants have also pointed to as an alternative solution. See Pl. Opp. at 6. That case required a neutral videographer (presumably at a court reporting service) who would retain custody of the videotape and parties would not obtain copies until further order of the Court (presumably only if they were required for trial). Moreover, Defendants reiterate their offer to pay for the original of a stenographic deposition, regardless of who notices the deposition. If this procedure were followed, which should reduce the cost to Plaintiff of obtaining a reliable, neutral transcript that he would need anyway to be able to use a deposition. Finally, in light of Plaintiff's efforts to set the location for this deposition at inappropriate venues, Defendant reiterates its view that depositions should be conducted at neutral locations such as a court reporting service, which are typically available free of charge.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that their Motion for a Protective Order be granted, that the Deposition Notice at issue be quashed, and that the Court set appropriate guidelines on the conduct of depositions in this case as outlined in Defendants' Opening Memorandum.

Dated: March 16, 2011                    Respectfully submitted,

                                         By:   /s/ Chad R. Bowman
                                               Nathan E. Siegel, (D.C. Bar No. 446253)
                                               Chad R. Bowman, (D.C. Bar No. 484150)

                                        LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
                                        1050 Seventeenth Street, N.W., Suite 800
                                        Washington, D.C. 20036-5514
                                        Telephone: (202) 508-1100
                                        Facsimile: (202) 861-9888
                                        Email: nsiegel@lskslaw.com
                                        Email: cbowman@lskslaw.com