UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY SLATE<br><br>    Plaintiff,<br><br>vs.<br><br>AMERICAN BROADCASTING COMPANIES, INC., et al.<br><br>    Defendants. | CA. 09-1761 (BAH) (DAR) |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

COMES NOW Plaintiff, Gregory Slate, and hereby submits this Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel Answers to Interrogatories. Dkt. 43. ("Opposition Memo"):

Defendants repeatedly assert in their Opposition Memo that Plaintiff is motivated by nothing more than a desire to file motions, stating that the filing of the instant motion to compel reflects nothing more than an "interest in filing a motion to compel." *Id*. Defendants absurdly suggest that Plaintiff, a single person litigating this case *pro se*, seeks to burden Defendants, well-financed corporations with a team of attorneys, and their witnesses, by filing motions to compel. *Id.* Defendants offer no explanation as to how Plaintiff induced them to make glaringly frivolous objections and Plaintiff adamantly disputes the bizarre assertion that he simply enjoys filing motions to compel. *Id.* In fact, the record clearly demonstrates that it is Defendants who seek to make discovery burdensome for Plaintiff by repeatedly filing protective orders and

1

forcing Plaintiff to argue the relevance of every minuscule discovery request through a motion to compel. Dkt. 24, 29, 35, 38, and 39. While Defendants argue that Plaintiff responded with a motion to compel hastily, they seem to ignore the fact that the motion to compel was clearly necessary as evidenced by the fact that they have not produced any discovery in this case since May 2010, ten months ago. *See* Declaration of Gregory Slate ("Slate Decl.") Ex. 1. Plaintiff offered to withdraw his motion to compel if they would make a good faith effort to answer the interrogatories, however, Defendants have refused. *See* Slate Decl. Ex. 2. Dkt. 42-17. Instead they have suggested that Plaintiff should withdraw his motion to compel with nothing more than the assurance that the objections they provide to his next interrogatories, which cannot even be served until after the Court lifts the stay on discovery requests and with merely three months of discovery left, would not be based solely on their absurd calculation of the number of interrogatories previously served. *Id.* Dkt. 42-16.

Plaintiff respectfully submits that answers to the interrogatories should be compelled because (I) Defendant has information responsive to the interrogatories, and (II) the number served has not exceeded 25.

**I. DEFENDANTS' ASSERTION IT HAS NO INFORMATION IS CONTRADICTED BY UNDISPUTED FACTS**

Defendant ABC News Interactive, Inc. ("ANI") attempts to use Defendants' convoluted corporate structure to frustrate Plaintiff's discovery by asserting it "does not have any information responsive to the interrogatories." Dkt. 43. ANI asserts that ABC News/Starwave Partners doing business as ABC News Internet Ventures ("ABC Ventures") is the corporate entity responsible for content at http://abcnews.go.com, one of many websites used by the defendants, and therefore ANI can have no knowledge of the facts relevant in this case. *Id.* ANI

2

asks the court to ignore the fact that the same individual swears to the truth of interrogatories on behalf of both companies as evidenced by their responses, which concluded as follows:

> **AS TO RESPONSES TO INTERROGATORIES:**
>
> On behalf of ABC News Interactive, Inc., and pursuant to 28 U.S.C. § 1746, I hereby certify, under penalty of perjury under the laws of the United States, that the foregoing interrogatory responses are true and correct to the best of the corporation's knowledge, information, and belief.
>
> Executed on May 21, 2010
>
> _____
> Marsha Reed
> Secretary
> ABC News Interactive, Inc.
> ABC News/Starwave Partners d/b/a ABC News Internet Ventures

See Slate Decl. Ex. 1 at Pg. 9.

ABC-related corporate entities have used the same individual, Marsha Reed, who they identify as their secretary, to swear and affirm the truth and accuracy of interrogatory responses in this case. *See* Slate Decl. 3. The sworn affidavits in this case demonstrate that the Defendants and ABC Ventures are closely related, share the same employees and attorneys, and frequently operate in concert. *Id. See* Slate Decl. Ex. 1 at Pg. 9. The fact that Marsha Reed signed the previous interrogatories on behalf of both ANI, the defendant to which these interrogatories were directed, and ABC Ventures, the entity that defendants now claim to be responsible for one of the infringements at issue, should alone defeat the argument that Defendants are simply without

3

information to answer the interrogatories. *Id.* In fact, Defendants' previous interrogatory responses stated that "Defendants will interpret the Requests as if they were directed to ABC News Internet Ventures," which should again defeat any argument that they are now without knowledge to do so. *See* Slate Decl. Ex. 1 at Objection No. 1.

Despite the fact that, in Defendants' view, the naming of multiple parties is unnecessary, they now seek to stifle Plaintiff's discovery requests on the grounds that the court has not yet granted Plaintiff's pending motion for leave to amend the complaint to reflect the additional defendant. Dkt. 45. In fact, Plaintiff has been trying in vain to get Defendants to provide information about which ABC entities are responsible for each of the separate infringing broadcasts. *See* Slate Decl. Ex. 4. At two separate times in this case they have requested that one corporate defendant be replaced with another of their corporate entities. *See* Slate Decl. Ex. 5. Meanwhile, despite their promise to provide such information last week, they to refuse to clarify who exactly is want let in and out of this action and what exactly each entity does. Dkt. 42-16. In one instance Defendants sought to induce Plaintiff to replace one corporate defendant with a company that does not appear to be registered or incorporated in any jurisdiction. *See* Slate Decl. Ex. 4 and Ex. 5. The fact that Defendants have ignored Plaintiff's repeated requests that they provide any information verifying that the entity they assert should be added to this lawsuit is incorporated or legally recognized in any jurisdiction makes this maneuver all the more distressing. *Id*. In light of Defendants utter refusal to provide any information about these entities, through discovery or otherwise, it would be unjust to allow Defendants to defeat this interrogatory request on the basis that the request and or complaint has not yet been amended precisely as Defendants now seem to require.

The bottom line is that the interrogatories request information that could be provided by ANI or any of the other named defendants.  Defendants nearly admit as much when they state "these new interrogatories have nothing to do with web issues, but rather address the broader defenses in the case," which strongly suggests that the interrogatories request information held by the other corporate defendants as well, which, again, share employees and are represented by the same attorneys.  Dkt. 43.  The unfortunate fact that Plaintiff's interrogatories were propounded on a closely related corporate entity that Defendants now claim may not be legally responsible for one of the infringing broadcasts should not be allowed to stifle the discovery process in this case.  Defendants make it clear that even amending the interrogatories to name a party to the case which is not in dispute would only result in objections made on other grounds, necessitating a duplicative effort from Plaintiff to compel answers.  Dkt. 42-17.  Therefore, denying Plaintiff's motion to compel on this argument is not only unjust but will ensure that more of the Court's time will be expended on this issue at a later date.

## II. THE INTERROGATORIES SERVED DO NOT EXCEED THE NUMBER PERMITTED

### a. PLAINTIFF'S PRIOR INTERROGATORIES TOTAL 13

There is no evidence that the provision in the scheduling order which states that "each party is limited to 25 interrogatories," is anything other than a mere restatement of Rule 33(a)(1) of the Federal Rules of Civil Procedure ("a party may serve on any other party no more than 25 written interrogatories"), which would allow each party to serve 25 interrogatories on each opposing party.  As Plaintiff has already served 13 identical interrogatories on the Defendants last year, he would be entitled to 12 more per defendant.  Even if, as Defendant argues, the scheduling order contemplates interrogatories to be limited per side, rather than per party,

5

Plaintiff would still be entitled to 12 more, as he has served only 13 interrogatories on Defendants as a single entity and received only 13 unique answers. While the scheduling order in this case is no longer operable, even were the Court to reinstate that provision, Plaintiff would still be entitled to answers to the 9 interrogatories at issue in the instant motion.

Defendant's bizarre argument about how the Court should count the interrogatories in this case is logically inconsistent. They first argue that the nature of this case is different than those cases where multiple defendants, differently situated and often separately represented, requires distinguishing the interrogatories propounded and providing 25 per party rather than per side. If Defendants declare that all of the Defendants acted in concert, with the copyright infringements arising out of conduct of employees of the same parent company, then Defendants may answer in concert, and interrogatories may be counted per side. However, Defendants do not do this. Defendants argue that each of the three defendants will answer individually, and thus Plaintiff's prior 13 interrogatories should be counted as 39. Defendants cannot have it both ways - either the three defendants in this case are separate and answer separately, with Plaintiff allowed 25 interrogatories to be propounded on each of the defendants, or Defendants are a "single unified entity," with Plaintiff allowed 25 interrogatories total to be propounded on Defendants as if they were one party. Defendants have used a selective mixture of these two options in the way that best suits them. They have argued they are a "single unified entity," and therefore Plaintiff should be allowed 25 interrogatories total, yet they have answered each of the prior interrogatories as if they were separate defendants, returning three separate interrogatory Answers, with each referencing the Answer provided by one defendant, and asking that they

6

each be counted separately. The facts are clear, Plaintiff propounded only 13 unique interrogatories last year and Defendants responded with only 13 unique answers.

### b. PLAINTIFFS OUTSTANDING INTERROGATORY REQUESTS DO NOT EXCEED THE NUMBER ALLOWED

The second set of interrogatory requests are numbered 1-9. Plaintiff disagrees with Defendants unsubstantiated suggestion that the amount of space each interrogatory takes up on a page should be relevant to how they are counted. Dkt. 43. Defendants then argue that some interrogatories should be counted as two, but do not assess most of the interrogatories with enough detail to determine exactly how many interrogatories there might be.  They similarly ignore the fact that some questions are duplicative and ask for the same information requested in other interrogatories.

In dissecting the number of interrogatories here, Defendants rely on *Willingham v. Ashcroft*, 226 F.R.D. 57 (D.D.C. 2005), so Plaintiff will do so as well.  In *Willingham* the court stated that whether an interrogatory counts as one question or more requires a "pragmatic approach" that examines whether a single question combines "distinct areas of inquiry that should be kept separate." *Id.* at 59 (quoting *Banks v. Office of Senate Sergeant-at-Arms,* 222 F.R.D. 7, 10 (D.D.C.2004)).  For example, in *Willingham* the court analyzed one interrogatory and concluded that "whether the persons disciplined filed discrimination complaints and the particulars of those complaints" was one separate topic and should be distinguished from "[An employee's] service, the record of what she did in the cases before her, and the particulars of those cases," both of which had been collected into a single interrogatory. *Id.*  Similarly, this court has recognized that parties tend to introduce topics and demand to know everything about them, for example:

7

"whether a particular product was tested and then demand to know when the tests occurred, who performed them, how and where they were conducted and the result." *Banks,* 222 F.R.D. at 10. Questions such as these, falling underneath a single topic, should be regarded as such - it would be "draconian to view each of the demands as a separate interrogatory." *Id.* Under this general outline and the pattern suggested by *Willingham*, Plaintiff suggests that the interrogatories should be analyzed as follows:

    Interrogatory 1 raises one distinct area of inquiry concerning terms of an alleged agreement between Defendant and the Police Complaint Center and the circumstances under which Defendants claim the terms were agreed.
    Interrogatory 2 partially overlaps Interrogatory 1 and raises one distinct area of inquiry concerning representations of Plaintiff and or Diop Kamau alleged to support the existence of a license, whether any objective evidence of such a license exists, and the type of license allegedly granted.
    Interrogatory 3 raises one distinct area of inquiry concerning any specific representations by Plaintiff or Diop Kamau allegedly relied on by Defendants to support the allegation that Plaintiff was acting on behalf of anybody other than himself.
    Interrogatory 4 largely repeats Interrogatory 2, except that it is more specific, raising one distinct area of inquiry concerning information about the terms and circumstances of a specific license alleged to exist between Plaintiff and Diop Kamau.
    Interrogatory 5 raises one distinct area of inquiry concerning any time the footage was played, under what circumstances, and whether any compensation was involved.
    Interrogatory 6 raises one distinct area of inquiry concerning compensation given or received by Defendants in connection with the infringing broadcast.
    Interrogatory 7 raises one distinct area of inquiry concerning any information known to Defendants regarding the viewership of the infringing broadcast and any time Defendants may have made representations about the viewership to others.
    Interrogatory 8 raises one distinct area of inquiry concerning Defendants' first and last communication with 7 potential witnesses.
    Interrogatory 9 raises one distinct area of inquiry concerning the etification of policies related to the licensing of third-party footage by ABC, and policies related to the licensing of ABC's footage to third-parties.

    Plaintiff maintains that each of these interrogatories are single topics and do not contain "distinct areas of inquiry that should be kept separate." If this Court finds any of them to constitute more than 1 interrogatory, and, if so counted, would exceed Plaintiff's remaining 12

8

interrogatories, Plaintiff respectfully requests leave of the Court for the number of interrogatories exceeding 25.

Defendants point out in the Opposition Memos that, "If a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest." (citing *Allahverdi v. Regents of Univ. of N.M.*, 228 F.R.D. 696 (D.N.M. 2005)). Defendants assert that Plaintiff propounded 39 interrogatories on March 2010. However, their responses demonstrate that they did not raise any objection to the number of interrogatories served last when they claim they received and answered 39. Tellingly Defendants waited more than a year to raise an objection to the number of interrogatories in an attempt to sneak this baseless objection past a *pro se* litigant they hoped would not notice. Audaciously the Defendants assert that when faced with such obviously frivolous objections to interrogatories Plaintiff is unreasonable in asking this Court for an order compelling their answers.

**WHEREFORE**, the Plaintiff, Gregory Slate respectfully requests that this Honorable Court enter an Order Compelling the Defendants to provide Responses to Plaintiff's Second Set of Interrogatories within ten (10) days of the date of such an order.

Dated This 23rd Day of March, 2011        Respectfully Submitted,

GREGORY SLATE
Plaintiff

/s Gregory Slate        .
Gregory A. Slate
Post Office Box 21020
Washington, DC 20009
Phone: (202) 907-7526
Fax:   (917) 591-6266