UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **GREGORY SLATE**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**AMERICAN BROADCASTING COMPANIES, INC., et al.**<br><br>    **Defendants.** | CA. 09-1761 (BAH) (DAR) |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO
MOTION TO COMPEL DOCUMENT PRODUCTION**

      COMES NOW Plaintiff, Gregory Slate, and hereby submits this Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel Document Production. Dkt. 42. ("Opposition Memo"):

      Defendants again assert in their Opposition Memo that Plaintiff's motion to compel is motivated by nothing more than his desire to file motions, stating: "Plaintiff was primed to file a motion to compel simply in order to be able to file a motion to compel…" Dkt. 42 ¶ 4. While Defendants may enjoy filing motions, as evidenced by the three Protective Orders they have filed in this case in the last two months, Plaintiff certainly does not. Defendants point to Plaintiff's honest efforts to correspond with them, both before the document requests were due and after, as evidence of his over-eagerness. Dkt. 42. In fact, the correspondence between the parties is simply further evidence of Defendants' efforts to obstruct and delay any attempt at discovery. Apparently Defendants did not consider the copies of document requests delivered by

1

email sufficient to give notice, and at the 30 day mark insisted that they required three more days to respond, as if they were only served by mail, only to object to nearly all requests. Dkt. 42-4. If anything, Plaintiff's communication with Defendants should have been helpful to Defendants as it put them on notice that they would need to justify any deficient production of documents. Instead they insist that Plaintiff is being unreasonable and impatient because he immediately requested a 7(m) conference after reading Defendants' responses and objections to the document requests that demonstrated they would once again scoff at discovery in this case. *Id.*

Plaintiff respectfully submits that an order compelling responses to Plaintiff's second set of document requests is warranted because each request is relevant, sufficiently specific as to not be overly broad or burdensome, and because there is no "reporter's privilege" that protects the requested documents as Defendants assert.

I. **PLAINTIFF'S REQUESTS ARE RELEVANT AND NOT OVERLY BROAD**

In civil discovery, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Fed. R. Civ. P.* 26(b)(1). "Relevance for discovery purposes is broadly construed." *Doe v. District of Columbia*, 231 F.R.D. 27, 30 (D.D.C. 2005). "Once a showing of relevance has been made by the party seeking discovery, the party objecting to that discovery bears the burden of showing why discovery should not be permitted." *Alexander v. FBI*, 193 F.R.D. 1,3 (D.D.C. 2000) (internal quotations omitted); accord *Ellsworth Assocs., Inc. v. United States*, 917 F.Supp. 841, 844 (D.D.C. 1996) ("A party opposing discovery bears the burden of showing why discovery should be denied."). Defendants assert that nearly all of Plaintiff's Document Requests are irrelevant and not subject to discovery, but they have not met the substantial burden of explaining why. Dkt. 42. To the

2

few that they did not object to at the time, weeks later they still have not produced one responsive document, although they acknowledge that the documents exist and are in their possession, insisting that Plaintiff continue to wait until after the Court rules on a motion for yet another protective order which Defendants have not yet bothered to file. *Id.*

A. **REQUESTS NO. 1, 2, 4, 6, 10, 11, 12, & 16 FOR EMPLOYMENT RECORDS ARE RELEVANT**

A cursory analysis of the cases cited by Defendants in support of their claim that discovery of personnel files is routinely denied by courts reveals exactly the opposite. Defendants cite *Fullbright v. State Farm* as "denying discovery demand for personnel files." In *Fullbright,* the court actually compelled discovery of personnel records of individual insurance adjusters who participated in the denial of Fullbright's car accident claim because the requested records might demonstrate the adjusters' "background, qualifications, training and job performance." *Fullbright v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 300436, at *4 (W.D. Okl. Jan. 20, 2010). The denial cited by Defendants was only the court's refusal to compel personnel files from employees who were not involved in the claim. *Id.* at 4. Similarly, Defendants quote from *Lurensky v. Wellinghoff,* where the court said that disclosure of personnel files "*irrespective of any connection* between the information they may have and their personnel files" is unwarranted. *Lurensky v. Wellinghoff,* 271 F.R.D. 345 (D.D.C. 2010)(emphasis added). *Lurensky* is an employment discrimination case where the court refused to compel production of the entire personnel files of all defendant's employees after it had already willingly provided the relevant information from the personnel files of comparable employees. *Id.* In contrast, in this case Plaintiff is merely asking for information from personnel files of employees who are direct

3

fact witnesses to the events at issue in this case, and about whom Defendants have offered no information whatsoever.

The permissibility of discovery of personnel files to establish the training, credentials, background, and prior bad acts of witnesses is well established.  *See Megargee v. Wittman*, No. 06-CV-684, 2007 WL 2462097, at *2 (E.D.Cal. Aug. 27, 2007) (concluding that information in personnel files and training records was relevant); *Chapin v. Sell*, No. 04-CV-208, 2005 WL 2076591, at *7 (E.D.Wis. Aug. 25, 2005) (granting plaintiff's motion to compel defendant police officer's personnel records as relevant to plaintiff's negligent supervision claim). Broad discovery of "personnel files of all members and employees" of a party has also been deemed relevant and allowed.  *Kerr v. US District Court for the Northern District of California*, 426 U.S. 394 (1976) (Supreme Court refused writ of mandamus to prevent Plaintiffs, incarcerated offenders, from discovering the "personnel files of all members and employees" of the California Adult Prison Authority, in an action over the determination of "the length of detention and conditions of punishment for convicted offenders.")  In copyright infringement cases in particular, the personnel files of a parties' CEO and other employees seemingly far removed from the facts have been deemed relevant and been compelled by the court. *Bryant v. Mattel*, 2007 WL 5430893 (C.D. Cal.) (granting Plaintiff's motion to compel defendant's CEO's un-redacted personnel file in a copyright infringement action); *Fryer v. Brown*, 2005 WL 1677940 (W.D. Wash) (granting Defendant's motion to compel Plaintiff's employees' personnel files in copyright and trademark infringement action).

It is apparent from Plaintiff's requests that they are intended to discover the named witnesses' background, qualifications, training, job performance, and other relevant

4

information as each request specifically calls for Defendants to turn over their employee witnesses' "initial employment application... performance evaluations, [and] resume."  Do these employees have background, experience, and or training in the industry standard practice of licensing footage from third-parties?  If so, do their performance evaluations evidence that they have failed to do this or other important job functions in the past?  How exactly does the Defendant describe the job duties of each of these employees?  Does the nature of their employment agreement or compensation packages provide incentives for keeping production costs down, therefore creating incentives to use third-parties' works without license and compensation?  Defendants boldly claim Plaintiff, an Emmy Award Winning Journalist, agreed to work for them in exchange nothing more than reimbursement of his expenses.  Do these employees similarly work for expenses only?  These are all questions that can only be answered through the Defendants' production of the requested personnel files.

      Defendants admitted last year that they believed employment records of witnesses are relevant in this case when they propounded much broader requests for all documents related to "any member of your [Plaintiff's] 'crew' and any of your [Plaintiff's] employees" and for "any and all documents relating in any way" to five of Plaintiff's past employees.  *See* Declaration of Gregory Slate ("Slate Decl.") Ex. 1, Request Nos. 6 through 11.  Defendants have offered no explanation as to why their broad requests are relevant but far more narrow requests by Plaintiff are not.

      Each one of the employment files requested are for individuals who are undoubtedly relevant fact witnesses in this case as each appeared directly in the infringing broadcast and or was named in initial disclosures.  The files requested bear directly on facts

5

asserted in the complaint, and answers to interrogatories. Dkt. 1. (¶ 8 "Mendelsohn informed Slate that he would pass on the idea to Stossel and see if anyone at ABC News was interested.") (¶ 9 "Soon thereafter, Glenn Ruppel ("Ruppel"), a producer at ABC News, contacted Slate."). Dkt. 23-2. Some of the files requested are for employees whose actions represented Plaintiff's entire interaction with the Defendants. That the producers and anchors worked on the infringing broadcast in their capacity as Defendants' employees makes their job duties, background, training, experience, compensation, performance and other information in their personnel files directly relevant in this case. For these reasons Plaintiff's motion to compel these documents must be granted.

### B. REQUEST NO. 3 FOR RECORDS RELATED TO PAST INFRINGEMENTS IS RELEVANT AND NOT OVERLY BROAD

Defendant does not seem to argue against the relevance of Defendants' past infringements, but instead implies that the request is overly broad by alleging it would be a "Herculean task" for them to compile documents related to their past copyright infringements. Dkt. 42. Courts have clearly acknowledged that prior complaints against a defendant for the same or similar conduct to that alleged in the action is sufficiently relevant to be discoverable and that prior infringements are relevant in copyright infringement actions. *See Superior Form Builders v. Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir.) (asserting that defendant's history of copyright infringement was relevant as to whether infringement was willful); *Fitzpatrick v. MCI Telecommunications Corp.*, 1997 WL 576391 (E.D.La.) (affirming magistrates judge's ruling that "prior complaints, civil lawsuits and letters of accusation" are relevant in fraud, misrepresentation and willful misconduct action); *Lauratex Textile Corp. v. Alton Knitting Mills*, 519 F.Supp. 730 (D.C.N.Y. 1981) (asserting that six copyright infringement

6

cases brought against the defendant within the last three years was relevant as evidence of knowledge of infringement).

Defendants argue that because copyright infringement complaints could be made to any of its employees this request is too burdensome. Dkt. 42. However, Defendants' argument ignores the limitations inherent in a request for documents related to such a legal matter. Plaintiff has propounded a request for *documents* related to prior infringements by the Defendants, not an interrogatory asking them to list every time it has been contacted about or accused of infringement. The request is naturally limited to those complaints that were serious enough to be reduced to writing or proceed far enough to have generated a written record. Although Defendants claim they do not have a "central repository for storing allegations of copyright infringement," written complaints of copyright infringement received by any of its employees are likely forwarded to Defendants' vice-president just as Plaintiff's initial infringement complaint was. *Id.* Should Defendants be allowed to object to this entire field of request and withhold clearly relevant documents simply because they propose that they are accused of infringement so frequently that producing the documents would be burdensome? Do Defendants not have a policy or procedure for which of its divisions handle copyright infringement complaints if they occur as frequently as they assert? Surely the documents which would be most responsive to Plaintiff's request would not be that difficult for Defendants to obtain.

Although Defendants now object to Plaintiff's request, two of Defendants' own Document Requests sought nearly identical information from Plaintiff that are at least as broad and burdensome. Those requests read as follows:

7

     Defendants' Request Number 27: "…any and all documents that in any manner relate to any civil suit, legal action, or claim by you or against you for copyright infringement or breach of contract."
     Defendants' Request Number 28: "…any and all documents related to any legal proceeding (including without limitation any lawsuits, arbitrations or administrative or regulatory proceeding) or any investigation (including without limitation any inquiry by any law enforcement agency, regulatory body, educational institution, insurance company, or other government entity), whether criminal or civil in nature, in which you have been a party, subject, or target, regardless of the outcome of any such legal proceeding or investigation."

*See* Slate Decl. Ex. 1.

  Clearly Defendants believed such broad requests were relevant and not overly burdensome when they propounded them on Plaintiff, but now they characterize much more specific requests by Plaintiff as broad and burdensome.  Dkt. 42.  Courts have clearly deemed the information sought by Plaintiff to be relevant, and it is not a serious burden on Defendants to produce the requested records.  For the foregoing reasons Plaintiff's motion to compel must be granted.

  C. **DOCUMENTS RESPONSIVE TO REQUEST NO. 5 HAVE STILL NOT BEEN PRODUCED**

  Defendants' responses indicate that they have or will produce documents responsive to this request.  They have not produced a single document responsive to any of the requests in Plaintiff's second set of documents requests since their response but their pleadings suggest that they have many responsive documents. Dkt. 42.  Plaintiff's motion to compel should be granted and Defendants ordered to produce the documents or swear that they do not exist.

  D. **REQUEST NO. 7 FOR DOCUMENTS RELATED TO THE NUMBER OF TIMES THE FOOTAGE WAS VIEWED IS RELEVANT**

  Defendants attempt to use the potential bifurcation of discovery as a shield from participating in any discovery, claiming, without explanation, that the number of times the broadcast containing Plaintiff's copyrighted footage was viewed is only relevant to damages.  *Id*.

8

However, Defendants have themselves raised this issue during this phase of discovery through their answers to interrogatories. *See* Slate Decl. Ex. 2. For example, in response to Interrogatory Number 11 in Plaintiff's first set of interrogatories Defendants assert that during the time that the infringing broadcast was posted on its websites it was "viewed, in whole or in part, approximately 30 times." *Id* at 11. Plaintiff now seeks to verify the information Defendants have voluntarily placed at issue during this phase of discovery by verifying or refuting Defendants' assertions through this document request.

Plaintiff's investigation reveals that the infringing broadcast including Plaintiff's copyrighted footage was downloaded and or recorded by individuals to whom Defendants made the footage available who then reproduced it on other websites, such as YouTube. *See* Slate Decl. 3. Were these viewers authorized to reproduce the broadcast as they did? Who were these viewers? What was the extent of the license or agreement between the Defendants and these viewers? Does the caveat of "in whole or in part" in Defendant's response mean they intend to assert that only the part of the episode that did not contain Plaintiff's footage was viewed? What do the defendants know about what parts of the infringing episode and Plaintiff's footage was viewed? All of these questions go directly to the number of infringements and contributory infringements for which defendants are liable. Only through the production of the requested documents will Plaintiff learn the answers to these important liability questions, which makes these documents directly relevant and discoverable during this phase of discovery. For all the foregoing reasons Plaintiff's motion to compel must be granted.

  E. **DOCUMENTS RESPONSIVE TO REQUEST NO. 8 HAVE STILL NOT BEEN PRODUCED**

Three weeks after responding that they would produce copies of records demonstrating payments they claim were made in connection with infringing broadcast, Defendants have not produced one responsive record. In their initial document responses Defendant produced screenshots from their own computer systems that list checks allegedly made out to various individuals pursuant to an invoice for "preproduction" services which Defendants assert were actually payments for licensing Plaintiff's footage. However, Defendants have not produced a copy of one check paid to anyone. Are there any terms on the checks? Who endorsed them? To what accounts were they paid? Defendants premise all their defenses on these payments but have not produced a single document demonstrating that any one of them were made. Therefore, Defendants should be ordered to produce these payment records or swear that they do not exist.

F. **DOCUMENTS RESPONSIVE TO REQUEST NO. 9 HAVE STILL NOT BEEN PRODUCED**

Defendants have indicated that they will produce documents responsive to Request Number 9 but weeks later they still have not. The request seeks copies of interviews conducted by Defendants that involved the infringing footage. It is apparent from Defendants' response that these documents exist but they still have not produced them. Dkt. 42. Therefore, Defendants should be order to produce the documents or swear that they do not exist.

G. **DOCUMENTS RESPONSIVE TO REQUEST NO. 13 HAVE STILL NOT BEEN PRODUCED**

Defendants' responses indicate that they have or will produce documents responsive to this request. They have not produced a single document responsive to any of the requests in Plaintiff's second set of documents requests but their pleadings suggest that they have

many.  Plaintiff's motion to compel should be granted and defendants ordered to produce the documents or swear that they do not exist.

### H. REQUEST NO. 14 FOR POLICIES RELATED TO JOURNALISTIC INTEGRITY AND STANDARDS ARE RELEVANT

Defendants' affirmative defenses imply that they relied on obviously suspect representations by Diop Kamau (AKA Don Carlos Jackson), including his alleged assertion that he owned and could license Plaintiff's footage but, because of a mysterious computer "hacking incident," could not produce any agreement signed by Plaintiff to support that claim.  Dkt. 25 at Pg. 13.  *See* Slate Decl. Ex. 4.  Diop Kamau has been identified as a source for the Defendants, which suggests they had enough basic information about his background and credibility to make an informed evaluation of his statements.  It is clear that any industry standard background check of sources called for by any credible news syndicate's policies and procedures would have revealed that representations by Diop Kamau were questionable and should be subject to further vetting and verification.  A simple search of past news stories would have revealed that he had self-proclaimed "emotional problems."  Dkt. 30-2, Pg 22 at ¶ 1.  A search of court records would have revealed multiple lawsuits and restraining orders against him alleging fraud, copyright infringement, identity theft, and a laundry list of bizarre behavior.  Dkt. 28-1 at Pg. 15-20.  Defendants' policies concerning how it vets sources, what types of sources it uses, who may act as a confidential source, and any and all other policies related to the journalistic standards and integrity it asks its employees to adhere to are relevant to determining what Defendants knew or should have known about the reliability of the representations made by this source about the infringing footage.  This information goes directly to whether it is reasonable for Defendants to claim any affirmative defenses that depend on their innocent reliance on his remarkable claims.

Therefore, the requested documents are relevant and Plaintiff's motion to compel should be granted.

I. **REQUEST NO. 15 FOR POLICIES RELATED TO OUTSIDE FREELANCERS ARE RELEVANT**

"Outside Freelancer" is how Plaintiff is referred to in documents generated by Defendants' own employees prior to commencement of this litigation.  *See* Slate Decl. Ex. 5. Plaintiff's Complaint asserts he created the footage contained in the copyrights at issue in this case "while working as a free-lance journalist." Dkt. 1.   Webster's Dictionary defines freelancer as  "a person who acts independently without being affiliated with or authorized by an organization." Defendants now assert general denial and a variety of convoluted affirmative defenses including work-for-hire, implied license, and fraud of the copyright office.  Dkt. 2.  All these defenses are premised on the idea that Plaintiff was actually exactly the opposite of an outside freelancer, and that he was an employee of another person or company, with whom he never signed an agreement, received compensation or even a W-2 from, but from whom Defendants claim they believed could receive payment and negotiate on his behalf.   While Defendants' Opposition Memo suggests that they may be backing away from some of these defenses, their case clearly depends on them to justify their belief that they were authorized to use the footage even after being informed by Plaintiff that they had no license, implied or otherwise, to do so, months before the infringing broadcast.  Dkt. 1-4.  This line of inquiry therefore continues to be relevant.  How do Defendants' policies define "outside freelancer?" What do Defendants' policies on freelancers reveal about how they are treated, compensated, and their footage licensed?  What do the differences between Defendants' policies governing

12

regular employees and those related to freelancers reveal about the nature of Defendants' relationship with the Plaintiff?

Defendants' response to this request is perplexing. They suggest that the only documents and policies conceivably relevant would be those relating to outside camera crews, even though the National Academy of Television Arts and Sciences recognizes Plaintiff as an Emmy Award Winning *Investigative Producer,* and he has never been referred to as a cameraman. *See* Slate Decl. Ex. 6, at Category #2-b. Are Defendants asserting that Plaintiff is the only freelance producer/journalist that they have ever hired? That seems unlikely. Are they denying that policies relating to freelance producers/journalists exist? It's not clear. These questions will be answered by a review and comparison of all of Defendants' policies on freelancers and regular employees. Therefore, Plaintiff's motion to compel should be granted and the request deemed to encompass all of the Defendants' employee policies.

### J. REQUESTS NO. 17 & 18 FOR "MISSING RECEIPT FORMS" ARE RELEVANT AND NOT PRIVILEGED

On a "Missing Receipt Form" Defendants' employee writes the words "Outside Freelancer" to describe Plaintiff and then leaves blank the space provided to identify any company Defendants believed Plaintiff worked for. *See* Slate Decl. Ex. 5. Plaintiff seeks to obtain copies of these forms completed by employees of Defendant to demonstrate what is typically written on these forms concerning who an individual works for and or their relationship to the Defendants. This supports the allegation in Plaintiff's complaint that he was "working as a freelance journalist" and it refutes Defendants' affirmative defenses that are premised on Plaintiff being an employee of Defendants or someone else who could have granted a license to his footage. Dkt. 1 and 2. How many more of these forms containing this damaging admission

13

by Defendants are there?  Do Defendants' employees typically leave the company section of the form blank or complete it?   These questions can only be answered through reasonable production of the requested documents, which Defendants refuse to provide.

Because the requested documents are clearly relevant, Defendants attempt to invoke what they describe as "Reporter's Privilege" to frustrate the discovery of these documents. <u>Dkt. 42.</u> The Supreme Court has made it clear that reporters have no more privilege than the First Amendment allows every citizen. *Branzburg v. Hayes*, 408 U.S. 665, ("A number of States have provided newsmen a statutory privilege of varying breadth, but the majority have not done so, and none has been provided by federal statute.[]… We are asked to create another by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do.")  In support of their position Defendants have cited a number of lower court cases addressing disclosures by *non-party* journalists that are clearly distinguishable from this case. *See In re Slack,* ---F. Supp. 2d ---, 2011 WL 782042 (D.D.C. Mar. 8, 2011) (Howell, J.); *In re Subpoena to Jeffrey Goldberg,* 693 F. Supp. 2d 81, 85 (D.D.C. 2010).  At issue before the court is an alleged reporters privilege asserted by Defendants, a party to the action, concerning pivotal documents possessed by them, not by a third-party as is in the cases cited by the defendants.  It is clear that courts draw a distinction between civil cases in which the reporter is a party and ones in which the reporter is not: "When the journalist is a party, and successful assertion of the privilege will effectively shield him from liability, the equities weigh somewhat more heavily in favor of disclosure." *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C. Cir). *Accord Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 119 (D.D.C. 2002).

Even if there is a Reporter's Privilege applicable here it would be Plaintiff's to assert. Defendants assert that the documents requested reveal "exactly what location he [Plaintiff]…went to gather news, when and for how long they were there and what they were doing…" Dkt. 42. A privilege protecting details about Plaintiff's news gathering activities and practices is his to assert not Defendants. Moreover, the minuscule news gathering details that could be disclosed by the requested documents are stale and insignificant as they concern a story that aired nearly 3 years ago and do not involve any confidential sources. For all the foregoing reasons Plaintiff's motion to compel should be granted.

K. **REQUEST NO. 19 FOR DOCUMENTS RELATED TO REVENUES IS RELEVANT**

Defendants again attempt to use the bifurcation of discovery as a shield against discovery of obviously relevant documents. Defendants' argument ignores the unique facts concerning "sweeps" and related advertising incentives pled in Plaintiff's complaint. Dkt. 1 at ¶ 23

The Complaint specifically alleges that the infringing episode "aired during May "sweeps." *Id.* The "sweeps" rating periods occur only 4 times a year, including once in May of each year. *See* Slate Decl. Ex. 6. "Sweeps" refers to the period when the most detailed information concerning program viewership is collected. *Id.* At the end of each "sweeps" period all of the detailed viewing data collected is aggregated. *Id.* This aggregated information provides a basis for program scheduling and advertising decisions by television stations, cable systems, and advertisers throughout the year. *Id.* This scheme for collecting and interpreting ratings information exaggerates the importance of the performance of programs and producers during "sweeps." *Id.* A poor performance during "sweeps" could result in the cancellation of a show or

the termination of a poor performing producer. *Id.* Since the infringing broadcast appeared during the May "sweeps" period discovery of this information reveals much about the additional incentives that existed for the Defendants and their employees to ignore Plaintiff's copyrights to ensure high ratings during "sweeps." Therefore, the documents requested by number 19 are directly relevant to the allegations in the Complaint and therefore Plaintiff's motion to compel must be granted.

### L. DOCUMENTS RESPONSIVE TO REQUEST NO. 20 HAVE STILL NOT BEEN PRODUCED

Defendants' response indicates that they have or will produce documents responsive to this request. However, they have not produced a single document responsive to any of the requests in Plaintiff's second set of documents requests although their pleadings suggest that they possess many. Therefore, Plaintiff's motion to compel should be granted and defendants ordered to produce the documents or swear that they do not exist.

### M. DOCUMENTS RESPONSIVE TO REQUEST NO. 21 HAVE STILL NOT BEEN PRODUCED

In their Opposition Memo Defendants specifically refer to an "agreement" which outlines the terms for "camera crews" and or "daily hires" which is responsive to this request but more than three weeks after responding that these documents would be produced they still have not provided Plaintiff with a single one. Dkt. 42. Therefore, Plaintiff's motion to compel should be granted.

16

**WHEREFORE**, the Plaintiff, Gregory Slate respectfully requests that this Honorable Court enter an Order Compelling Defendants Document Production within ten (10) days of the date of such an order.

Dated This 23rd Day of March, 2011

                                        Respectfully Submitted,

                                      GREGORY SLATE
                                      Plaintiff

                                      /s Gregory Slate
                                      Gregory A. Slate
                                      Post Office Box 21020
                                      Washington, DC 20009
                                      Phone: (202) 907-7526
                                      Fax:    (917) 591-6266