# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY SLATE,

        Plaintiff,

        v.

AMERICAN BROADCASTING
COMPANIES, INC., *et al.*,

        Defendants.

Civil Action No. 09-1761 (BAH)

Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Pending before the Court are three motions brought by the plaintiff Gregory Slate: (1) the

plaintiff's Motion to Vacate, Clarify, Reconsider or Amend this Court's April 23, 2013 Order

Granting Defendant's [*sic*] Motion for Summary Judgment and Motion to Dismiss ("Pl.'s

Reconsideration Mot."), ECF No. 105, pursuant to Federal Rules of Civil Procedure 59(e), 60(a),

60(b)(1), 60(b)(3), and 60(b)(6),[1] which motion seeks to alter or amend the Court's Order of

April 23, 2013 ("Order"), ECF No. 102; (2) the plaintiff's Objections and Opposition to

Defendants' Bill of Costs ("Pl.'s Opp'n to Costs"), ECF No. 106; and (3) the plaintiff's Request

for Judicial Notice in Support of His Motion to Vacate, Clarify, Reconsider or Amend this

Court's April 23, 2013 Order Granting Defendant's [*sic*] Motion for Summary Judgment and

Motion to Dismiss ("Pl.'s Request Jud. Notice"), ECF No. 107. The Court's Order challenged

by the plaintiff granted summary judgment to the defendants ABC News, Inc., ABC News

Interactive, Inc., and Disney/ABC International Television, Inc. (collectively, "defendants"), and

also dismissed the action on the additional ground that such a sanction was appropriate for bad-

---

[1] Although the plaintiff asserts that he is moving to alter or amend the judgment pursuant to Federal Rules of Civil Procedure, he initially cites to D.C. Superior Court Rules and District of Columbia authority. The Court construes the plaintiff's motion as intending to rely upon the applicable Federal Rules of Civil Procedure.

faith litigation conduct.  *See Slate v. ABC, Inc.*, 941 F. Supp. 2d 27, 52 (D.D.C. 2013)

("Opinion").  For the reasons set forth below, all three of the plaintiff's motions are denied.

## I.   BACKGROUND

The factual background of this copyright case over the defendants' alleged unauthorized

use of less than one minute of video footage, to which the plaintiff claims a copyright, is

thoroughly set out in the Court's prior Memorandum Opinion and will not be repeated here.  *See*

*Slate*, 941 F. Supp. 2d at 29–38.  A brief review of the procedural history in this matter is helpful

to provide context for consideration of the plaintiff's pending motions.

Following the filing of the amended complaint, the plaintiff's counsel moved to

withdraw, Mot. for Withdrawal of Appearance, ECF No. 13, having advised the plaintiff that

"their withdrawal is an ethical necessity." Pl.'s Opp'n to Mot. for Withdrawal at 2, ECF No. 14.

Upon hearing the reasons underlying that motion, the motion was granted and the then-presiding

Judge recused himself. *See* Minute Order (Aug. 19, 2010); *Slate*, 941 F. Supp. 2d at 32 n.5.  The

case was then re-assigned to the current presiding Judge and the plaintiff proceeded *pro se*. *Slate*,

941 F. Supp. 2d at 32 n.5.

The ensuing litigation prompted a significant number of discovery disputes, including no

fewer than twelve motions for protective orders and motions to compel and two motions for

sanctions based on the other side's allegedly impermissible conduct.  *See* ECF Nos. 24, 29, 35,

38, 39, 56, 61, 62, 65, 66, 72, 77, and 78; *see also Slate v. ABC*, 802 F. Supp. 2d 22, 23 (D.D.C.

2011) (affirming Magistrate Judge's decision to sequester laptop and external hard drive and

deny plaintiff's motion to compel production of the hard drives); *Slate v. ABC*, 274 F.R.D. 350,

351 (D.D.C. 2011)(affirming Magistrate Judge's decision to deny the plaintiff's motion to compel

production of records relating to, *inter alia*, personnel and employment records for defendants' employees).

Following discovery, the defendants filed Motions for Summary Judgment, ECF No. 93, and to Dismiss for Bad-Faith Conduct of Litigation, ECF No. 94. These motions were granted on April 23, 2013. *See* Order, ECF No. 102. This litigation has not come to an end, however; instead, the plaintiff has filed the three pending motions in an effort to revive his original claims. As noted, the plaintiff has moved (1) for reconsideration; (2) to deny the defendants' Bill of Costs; and (3) to take Judicial Notice.[2] These motions are addressed below.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 59(e)

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Messina v. Krakower,* 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A district court's denial of a request for this extraordinary relief is reviewed only for abuse of discretion. *See Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013); *Messina,* 439 F.3d at 759; *Anyanwutaku v. Moore*, 151 F.3d 1053, 1058 (D.C. Cir. 1998); *Firestone*, 76 F.3d at 1208.

Absent a demonstrated intervening change of controlling law or new evidence, the law is well-settled that litigants may not use Rule 59(e) either to repeat unsuccessful arguments or to assert new but previously available arguments. As the Supreme Court observed, "Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or

---

[2] The plaintiff's appeal to the Court of Appeals for the D.C. Circuit, ECF No. 108, has been held in abeyance until the resolution of the plaintiff's motions pending before this Court. *See* ECF No. 110.

to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks and citation omitted); *see also Messina,* 439 F.3d at 759 (finding no error in denying Rule 59(e) motion where "motion did nothing more than rely on the same arguments that [the movant] originally made.") (internal quotation marks and citation omitted). This is because "Rule 59(e) motions are aimed at reconsideration, not initial consideration," and arguments raised for the first time on a Rule 59(e) motion may be deemed "waived." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012); *see also District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010) ("[A]n issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised; accordingly, such an issue is not preserved for appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness and consider the issue."). Thus, "Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment," *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012), or "a chance for [a party] to correct poor strategic choices." *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 15 (D.D.C. 2010); *see also Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993) ("[T]his Court has recognized that a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously."). "The strictness with which such motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." *United States Commodity Futures Trading Comm'n v. McGraw-Hill Cos., Inc.*, 403 F. Supp. 2d 34, 36 (D.D.C. 2005); *accord Silk v. Sandoval*, 435 F.2d 1266, 1268 (1st Cir. 1971) (acknowledging "the complementary interest in speedy disposition and finality, clearly intended by Rule 59").

To constitute "clear error" within the meaning of Rule 59(e), courts have required "'a very exacting standard,'" *Bond v. U.S. Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012) (quoting *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C. 2005)), such that the "final judgment must be 'dead wrong' to constitute clear error." *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). Indeed, the Seventh Circuit has vividly observed that "[t]o be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Electric Motors*, 866 F.2d at 233. Hence, *a fortiori*, "'[m]ere disagreement does not support a Rule 59(e) motion.'" *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

Similarly, although "[t]he term 'manifest injustice' eludes precise definition," *Roane v. Gonzales*, 832 F. Supp. 2d 61, 64 (D.D.C. 2011), it is clear that "manifest injustice" is an exceptionally narrow concept in the context of a Rule 59(e) motion. The D.C. Circuit has observed that, under Rule 59(e), "manifest injustice does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky v. CIA*, 355 F.3d 661, 665 (D.C. Cir. 2004) (internal quotation marks omitted). In a slightly different context, the Circuit has said that manifest injustice arises from "rulings that upset settled expectations—expectations on which a party might reasonably place reliance." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540 (D.C. Cir. 2007). These cases make clear that a manifest injustice does not result merely because a harm may go unremedied. *Accord Associated Gen. Contractors of Cal., Inc. v. Cal. State. Council of Carpenters*, 459 U.S.

519, 536 (1983) ("[T]he judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing.").  Instead, "manifest injustice" must entail more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law.

### B.  Federal Rule of Civil Procedure 60

#### 1.  *Rule 60(a)*

Federal Rule of Civil Procedure 60(a) permits the court to "correct a clerical mistake or a mistake arising from oversight or omission." FED. R. CIV. P. 60(a). However, the power "to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions." *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 146 (1958). A motion under Rule 60(a) can only "be used to make the record speak the truth and cannot be used to make it say something other than what was originally pronounced." 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PRO. CIV. (3D ED.) § 2854.

#### 2.  *Rule 60(b)(6)*[3]

The Supreme Court consistently held that courts should hesitate to grant rule 60(b)(6) motions except in "extraordinary circumstances." *Ackermann v. United States,* 340 U.S. 193, 199 (1950); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).  The D.C. Circuit has "similarly observed that Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'"  *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)). Under the established Rule 60(b)(6) doctrine, even an intervening

---

[3] Although the plaintiff invokes both Rule 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect") and Rule 60(b)(3) ("fraud . . . , misrepresentation, or misconduct by an opposing party"), nowhere does he brief these standards separately from Rule 59(e). In fact, he does not specifically allege fraud, misrepresentation, or misconduct anywhere in his motion for reconsideration. Therefore, the Court similarly does not address those parts of Rule 60(b).

change in case law is insufficient to meet the extraordinary circumstances standard. *See*

*Gonzalez*, 545 U.S. at 536–38.

## III. DISCUSSION

The plaintiff's motions for reconsideration of the Order and to take judicial notice are

related since the five documents from other judicial proceedings for which he requests judicial

notice are presented to bolster arguments asserted in connection with the reconsideration motion.

*See* Pl.'s Mem. Supp. Mot. Reconsideration ("Pl.'s Reconsideration Mem.") at 30-31, ECF No.

105-1; Pl.'s Request Jud. Notice at 3–4. These efforts are unavailing. The plaintiff's motion

seeking to "rescind[]" the Order, *see* Pl.'s Reconsideration Mot., Att. 5 (Proposed Order), ECF

No. 105-5, along with his motion for judicial notice of filings in other courts and his opposition

to the defendants' bill of costs, are addressed below.

### A. The Plaintiff's Motion for Reconsideration Fails to Meet the Applicable Standard Under Rule 59(e)

The plaintiff has provided a laundry list of rules, including Rules 59(e), 60(a), 60(b)(1),

60(b)(3), and 60(b)(6), on which his motion for reconsideration of the Order is predicated. At the

outset, the Court concludes that the plaintiff's reconsideration motion should be evaluated under

the Rule 59(e) standard. First, Rule 60(a) is simply inapplicable since the relief the plaintiff

seeks is not mere revision of a clerical error, but a substantive change in the result of the

litigation. *See Bond v. Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012) (quoting *Am. Trucking*

*Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 146 (1958) ("[A] party may not use 'the power to

correct inadvertent ministerial errors . . . as a guise for changing previous decisions."). Second, it

is the practice in this jurisdiction to construe Rule 60(b) motions filed, as here, within 28 days of

the judgment as Rule 59(e) motions to alter or amend the judgment. *See Lightfoot v. Dist. of*

*Columbia*, 355 F. Supp. 2d 414, 420–21 (D.D.C. 2005) ("The general rule is that a motion for

7

reconsideration is treated as a '[Fed.R.Civ.P.] 59(e) motion if filed within [28] days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter'") (quoting *U.S. v. Pollard*, 290 F. Supp. 2d 153, 156 (D.D.C. 2003)); *Strumsky v. Washington Post Co.*, 922 F. Supp. 2d 96, 100 (D.D.C. 2013); *Middlebrooks v. Godwin Corp.*, 279 F.R.D. 8, 11 n.3 (D.D.C. 2011). Finally, the Rule 60(b) standard is more stringent than the standard under Rule 59(e) and, since the plaintiff fails to meet the Rule 59(e) standard, it is consequently not necessary to address his claims for reconsideration under Rule 60(b).[4] *See United States v. Phillip Morris USA, Inc.*, 686 F.3d 839, 843 (D.C. Cir. 2012) (contrasting Rule 60's "high bar for modification" with Rule 59(e)); *see also* CHARLES A. WRIGHT, ARTHUR R. MILLER,. 11 FED. PRAC. & PROC. CIV. § 2817 (3d Ed.) n. 15 ("Standards governing a motion for reconsideration under Rule 60(b) are somewhat more restrictive than those governing a motion to alter or amend a judgment under Rule 59(e).") (citing *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414 (D.D.C. 2005)).

As noted, Rule 59(e) motions are discretionary, and "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Messina v. Krakower*, 439 F.3d at 758 (internal quotations and citation omitted). Such a motion is "'not simply an opportunity to reargue facts and theories upon which a court has already ruled.'" *SmartGene, Inc. v. Advanced Biological Labs., SA*, 915 F. Supp. 2d 69, 72 (D.D.C. 2013); *see also Bond v. Dep't of Justice,* 286 F.R.D. at 20 (D.D.C. 2012) ("Re-litigating arguments or legal theories, that could have been raised earlier, do not qualify as an 'extraordinary circumstance' under Rule 59(e)."). Further, Rule 59(e) is "not intended to allow a second bite at the apple." *Oceana v. Evans*, 389 F. Supp. 2d 4, 8 (D.D.C. 2005).

---

[4] Indeed, the plaintiff does not indicate in his motion how he intends Rule 60(b), or any of its subparts, to apply, as his briefing generally discusses application of Rule 59(e). *See* Pl.'s Reconsideration Mem., *generally*.

Despite the plaintiff's submission of a lengthy memorandum of 43 pages and over 250 pages of exhibits in support of his motion for reconsideration – not even counting the additional 100 pages filed in connection with his motion to take judicial notice – his effort boils down to seeking another "bite at the apple." The plaintiff points to no intervening change of law and presents no new, let alone material, evidence that was previously unavailable. Instead, the plaintiff has merely regurgitated arguments raised previously in the dispositive motions and moved the Court to take judicial notice of irrelevant material pre-dating the Order.

In support of his motion for reconsideration, the plaintiff presents a variety of overlapping contentions critical of the Opinion for misconstruing the law and the facts, and relying on an incomplete record, such that, in the plaintiff's view, relief is required to secure substantial justice. Pl.'s Reconsideration Mem. at 1. The Court distills the plaintiff's contentions for ease of review as follows: (1) the conclusion that the plaintiff's copyright claim is barred by collateral estoppel was erroneous, Pl.'s Reconsideration Mem. at 2–16; (2) dismissal of the plaintiff's claims for litigation misconduct was erroneous, *id.* at 16–33; and (3) the factual findings of the Court are not supported by the record, *id.* at 33–43. These three distilled grounds for reconsideration are addressed *seriatim* below.

### 1. The Plaintiff Reprises Previously Rejected Arguments Against Finding His Copyright Claim Barred by Equitable Estoppel

The plaintiff devotes the first 16 pages of his memorandum in support of his motion for reconsideration to disputing the analysis in the Opinion that concluded the plaintiff's copyright infringement claim was barred by equitable estoppel. The plaintiff does not identify any new law from this Circuit supporting his view of the law, nor does he present any new evidence that would contradict the Court's findings and conclusions of law in the Opinion. *See Exxon Shipping*, 554 U.S. at 485 n.5. Instead, the plaintiff has re-packaged his prior arguments into

essentially three bases for why the equitable estoppel doctrine does not apply to his case, but those arguments are not sufficient to trigger reconsideration.

First, the plaintiff argues that *Boardman v. County of Spokane,* No. 94-35703, 1995 WL 444654 (9th Cir. July 26, 1995) (unreported), which was discussed in the challenged Opinion, "should . . . not be followed in this case because the position of the parties in this case is fundamentally different from those in Boardman." Pl.'s Reconsideration Mem. at 3. The plaintiff argued this point in his Opposition to the Motion for Summary Judgment, *see* Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Original Opp'n") at 27–30, ECF No. 95, and the Court has already rejected his view of the law, *Slate*, 941 F. Supp. 2d at 41–44. The plaintiff concedes that "although equitable estoppel is not available to determine copyright ownership, it may be available to determine copyright infringement." Pl.'s Reconsideration Mem. at 5. This is exactly how the Court applied the doctrine. As in *Boardman*, where the issue was not the resolution of a declaratory judgment action to determine copyright ownership, but rather whether the plaintiff in that case, like the plaintiff here, is estopped from asserting ownership of disputed material for purposes of suing the defendants for copyright infringement. *Slate*, 941 F. Supp. 2d at 43. The Court concluded that the plaintiff, having represented to the defendants his employment and agency status with a third-party organization, was equitably estopped from changing course and suing the defendants for infringement on the grounds that he personally owned the copyright. *Id.* at 44 (plaintiff "cloak[ed] himself in an agency relationship with the organization compensated to create the work," and "forfeit[ed] any independent ownership of the work"). The Court expressly determined that resolving whether the plaintiff actually owned the copyright in the video material or his actual employment status were "irrelevant to its holding." *Id.* at 43.

Second, the plaintiff argues that the doctrine of equitable estoppel does not apply to his case because the defendants failed to meet the elements of equitable estoppel, including that the plaintiff knew of the defendant's allegedly infringing conduct, that the plaintiff's actions did not constitute a disavowal of his copyrights, that the defendants' reliance on his actions was not reasonable, and that the reliance was not detrimental. *See* Pl.'s Reconsideration Mem. at 5–14. Like his *Boardman* argument, the plaintiff's objections to the application of equitable estoppel also appeared in his opposition memorandum. *See* Pl.'s Original Opp'n at 26–33. The Court has already considered these arguments and found them unpersuasive. *Slate*, 941 F. Supp. 2d at 44–46. Rule 59(e) does not permit a party to relitigate arguments the Court has already considered absent clear error or manifest injustice, which are not shown here. *See Messina,* 439 F.3d at 759.

In support of his view that collateral estoppel does not apply to his case, the plaintiff discusses a case not previously raised in dispositive motion briefing. Specifically, the plaintiff cites for the first time *Danielson, Inc., v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 44 (1st Cir. 2003), for the proposition that providing copies of work "is not determinative . . . to demonstrate the knowledge requirement of equitable estoppel." Pl.'s Reconsideration Mem. at 9. The mere citation to a newly discovered case, which was previously available during consideration of the judgment for which reconsideration is sought, is insufficient to trigger the necessity for reconsideration and meet the requirements under Rule 59(e). *Danielson* pre-dates the Order of this Court by a decade, is not binding on this Court, and, thus, fails to establish a change in the law.

In any event, even if the plaintiff had cited this case in a timely manner, the Court's conclusion would not change since the factual differences in that case render it inapposite. In *Danielson*, the copyright owner displayed at public meetings architectural plans, which were

then used by the defendant.  322 F.3d at 32.  The court concluded this display did not constitute a

publication sufficient to relinquish the owner's copyright interest, nor did the display amount to a

transfer of copyright interests sufficient to confer knowledge on the copyright owner of the

defendant's interest in, let alone use of, the plans.  *Id*. at 44.  By contrast, in this case, the

plaintiff turned over the video footage, in which he claims a copyright, after a course of dealing

that such delivery was in accord with the material's authorized use.  Thus, this new case citation

falls far short of demonstrating clear error or manifest injustice.  *See Messina,* 439 F.3d at 759.

 In short, the Court rejected the plaintiff's position that the defendants dealt with and

paid the wrong party for the rights to the disputed footage and, instead, concurred with

defendants' view that the copyright law cannot be exploited to permit "bait-and-switch schemes

whereby a person may hold themselves out as a principal of an organization to form and

implement agreements, and then claim personal ownership and demand more compensation after

all work is completed and paid for." Defs.' Reply Mem. Supp. Defs.' Mot. Summ. J. at 1, ECF

No. 97.

 Finally, the plaintiff contends that even if equitable estoppel bars his claims against ABC

News, Inc., "the Court cannot conclude that equitable estoppel bars Plaintiff from bringing

copyright infringement and contributory infringement suits against the other entities to which

Plaintiff has undeniably made no representations whatsoever."  Pl.'s Reconsideration Mem. at

15. Once again, in his original opposition brief, the plaintiff argued that his claims against such

entities should survive for the same reasons, which were rejected.  *See* Pl.'s Original Opp'n at

23–24. For reasons detailed in the challenged Opinion, the defendants reasonably believed that

they had bought and obtained the right to use the disputed footage in a news story for the ABC

show "20/20" and that they could use this story as ABC News, Inc. normally would, including in

normal distribution channels on the internet and other media. Thus, to the extent that the plaintiff is estopped from asserting copyright ownership in the footage against ABC News, Inc., he is similarly estopped from such assertion against the related entities also named as defendants.

### 2. *The Record Clearly Supports the Imposition of Sanctions*

The plaintiff argues in the next 27 pages of his memorandum in support of his motion for reconsideration that the Court made "a manifest error of law in concluding that the Plaintiff's claim should be dismissed for litigation misconduct. Pl.'s Reconsideration Mem. at 16; *id.* at 16–33. Notably, even if this dismissal determination were incorrect, the plaintiff's claims would not be revived since judgment has also been entered against him as a legal matter on the merits. Yet, the plaintiff's latest memorandum only reinforces the reasons why dismissal was properly imposed as a sanction. As support for his claim that "manifest error" occurred, the plaintiff contends, first, that the "clear and convincing" standard was not properly applied in evaluating the evidence of misconduct and, second, that he was entitled to a hearing before imposition of a sanction for litigation misconduct. These contentions do not warrant reconsideration.

At the outset, the Court notes that the plaintiff's argument for reconsideration rehashes numerous previous factual assertions made by the plaintiff that were contradicted by other evidence in the record, and have already been resolved against him. *Compare, e.g.,* Pl.'s Reconsideration Mem. at 22 (discussing "Plaintiff's statement that he never sent Mendelsohn receipts"), *with Slate*, 941 F. Supp. 2d at 31, 49 (discussing evidence demonstrating falsity of same statement); Pl.'s Reconsideration Mem. at 23 (discussing "Plaintiff's statement that ABC did not supply him with any camera equipment"), *with Slate*, 941 F. Supp. 2d at 33, 34, 35, 49 (noting documentation that the plaintiff requested, received and used camera equipment from ABC and demonstrating falsity of statement); Pl.'s Reconsideration Mem. at 28 (denying

plaintiff's involvement in his brother's use of false pretenses to manufacture and collect evidence from defendants), *with Slate*, 941 F. Supp. 2d at 51, n. 25 (noting clear evidence that plaintiff sought in discovery from defendants material that was generated in response to request made via e-mail from address using name of plaintiff's brother for information about licensing disputed footage); *and* Pl.'s Reconsideration Mem. at 29 (denying "intentionally producing voluminous amounts of irrelevant and misleading materials"), *with Slate*, 941 F. Supp. 2d at 50, n. 28 (citing need for Court's involvement on at least two occasions to caution plaintiff about his productions, which included entirely blank VHS tapes, a manual for a pressure washer, a manual for a Honda engine and other irrelevant materials). With two exceptions, the Court will not re-engage in parsing the voluminous record in this case since the plaintiff's twisting of the record through factual assertions that are variously inaccurate, incomplete or taken out of context, has already consumed substantial judicial resources. *See Slate*, 941 F. Supp. 2d at 29 (noting that "the handling of evidence" has made Court's task "more complicated" and "more time consuming"). Two factual issues raised by the plaintiff in his reconsideration briefing are addressed below merely to illustrate the appropriateness of the sanction imposed.

First, the plaintiff disputes the Court's conclusion that clear and convincing evidence demonstrated fabrication of the "August 21, 2006" letter, which the plaintiff produced in discovery and purported to be from the plaintiff to Michael Mendelsohn, a producer at ABC News, Inc. for the "20/20" program.[5] This letter was purportedly sent by the plaintiff over a year

---

[5] Interestingly, despite the relevance of the "August 21, 2006" letter in establishing at the initiation of the parties' relationship, the plaintiff's "independent freelance" status separate from the organization which sold the footage to the defendants, and the plaintiff's retention of exclusive rights in his footage, the plaintiff does not cite to, reference or even allude to this letter in his original pleadings. Instead, the plaintiff attached as an exhibit to his original complaint a letter, dated March 14, 2008, from the plaintiff to Glenn Ruppel of ABC News, stating that the plaintiff was "withdraw[ing] any sort of license; either express or implied, to use any portion of my footage for any purpose," and that "my footage belongs exclusively to me and is protected from use by anyone other than me." Compl., ¶ 22, Ex. D, ECF No. 1-4; *see also* Am. Compl, ¶ 22, ECF No. 11. By contrast to the "August 21, 2006" letter, which the defendants deny receiving, the defendants acknowledge receipt of the March 14, 2008 letter. Answer, ¶ 22.

before the disputed footage was filmed. The contents of the letter directly undermined the factual underpinnings of the defendants' defense, stating, *inter alia*, that the plaintiff is "an independent freelance journalist," rather than an employee or principal of the organization that sold the footage to the defendants, and that the plaintiff retained exclusive rights in his footage and required "an explicit licensing agreement . . . before my footage is broadcasted." *Slate,* 941 F. Supp. 2d at 31.

The Court based its conclusion that the letter was fabricated, in part, on another statement in the letter that: "In terms of compensation, I do not work for free or for expenses only" because "my recent success, including receiving an Emmy Award for Investigative Journalism, have [sic] substantially elevated the value of my work." *Id*. The nominees for the award, without the plaintiff's name, were announced in September, 2006 and plaintiff was not awarded the Emmy until November, 2006—both dates after the purported date of the letter. *Id*. at 32. The plaintiff nonetheless persists in defending the authenticity of this letter, arguing "that Plaintiff's piece was eligible to receive an Emmy months before the date on the letter and that the voting for the winner had occurred before the date on the letter." Pl.'s Reconsideration Mem. at 19. As the defendants aptly point out, the plaintiff's "explanations under oath and to the Court have evolved from (a) initially testifying that he had won the award prior to writing the letter, ..., to (b) explaining that he knew he was *nominated* and was simply overconfident that he would win, ... to (c) a suggestion (without any citation to evidence) that he somehow knew about the nomination of the underlying news broadcast *before* it was publicly announced because secret Emmy 'ballots' were necessarily submitted prior to a public announcement." Defs.' Combined Opp'n Pl.'s Reconsideration Mot. Recon. & Judicial Notice ("Defs.' Opp'n") at 5, ECF No. 111 (emphasis in original). The plaintiff's current story that he was somehow aware the project had

been *nominated* prior to the public announcement of the original group of nominees, in which he was not included, by way of explaining the statement in the letter that he had already *won* by August 2006, strains credulity and is contradicted by the record evidence, *see Slate,* 941 F. Supp. 2d at 32 (discussing sworn testimony of Rebekah Cowing, the Executive Director of the Chicago/Midwest Chapter of the National Academy of Television Arts and Sciences), and, thus, deserves no additional discussion.[6]

The second factual matter to be addressed concerns the plaintiff's characterization that the Court "ignore[d]" the defendants' withdrawal of their motion to quash Elizabeth Vargas' deposition notice when criticizing the plaintiff's failure to oppose the Defendants' motion to quash. Pl.'s Reconsideration Mem. at 30. Indeed, the Court cited the plaintiff's subpoena of Ms. Vargas and his threat to seek a contempt citation against her if she failed to appear for the deposition he had noticed, only to "never oppose[]" the defendants' motion to quash the subpoena, as an example of his "abuse of the discovery process." *Slate,* 941 F. Supp. 2d at 51. The facts are clear: when the plaintiff refused to change Ms. Vargas' deposition date, the defendants initially moved for a protective order in this Court, ECF No. 62, and when the plaintiff continued to threaten to seek a contempt sanction against Ms. Vargas in New York if she failed to attend the deposition, she also moved to quash the subpoena in the issuing court because that prevented the plaintiff from proceeding with any contempt motion in New York, the court issuing the subpoena. *Vargas, et al. v. American Broad. Cos*., No 1:11-mc-00183-P1 (S.D.N.Y.), ECF No. 5; *see generally* ECF No. 94-1 at 24. The plaintiff failed to oppose

---

[6] The defendants also correctly point out that the plaintiff misrepresents the evidence by asserting that the Emmy entry was later "corrected" to add plaintiff's "erroneously omitted" name, Pl.'s Reconsideration Mem. at 19, ignoring undisputed record evidence that there was no error to be "corrected" and that the plaintiff's name was added only because the awarding organization was lobbied to have the plaintiff's name added to the award in December 2006. Defs.' Opp'n at 6 n. 3 (*citing Slate*, 941 F. Supp. 2d at 47 n. 20).

defendants' emergency motion for a protective order, which this Court granted on June 8, 2011, nor did he file any opposition to the motion to quash in New York. *See* Minute Order (June 8, 2011) ("Elizabeth Vargas's and Defendants' Emergency Motion for Protective Order to Preclude Deposition (Document No. 62) is treated as conceded, and is GRANTED."). Only *after* this Court granted the protective order did Ms. Vargas withdraw her motion to quash in New York as moot. Thus, the Court's description of these events is entirely accurate as an example of the plaintiff's abusive litigation conduct, in which a non-party was required, in an abundance of caution, to file two duplicative motions to quash in two jurisdictions, to which the plaintiff then offered no substantive opposition. S*ee Slate,* 941 F. Supp. 2d at 51. Moreover, the plaintiff's description of these events serve only as yet another example of "half a story, offered to mislead." Defs.' Opp'n at 9, n. 5.

In sum, the plaintiff's briefing in connection with his pending motion for reconsideration continues to exhibit the clear and convincing pattern of omissions and obfuscations that warranted granting the defendants' motion to dismiss for bad-faith litigation conduct in the first place. *See Slate*, 941 F. Supp. 2d at 53; *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980); *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995).

The plaintiff also argues that he was entitled to have a hearing before the sanction was imposed, citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Pl.'s Reconsideration Mem. at 16. In *Chambers,* the Supreme Court made clear that federal district courts retain an inherent power to impose sanctions for bad faith conduct and, when such sanctions are imposed for conduct occurring before other tribunals, a hearing is required. *Chambers*, 501 U.S. at 57. When, by contrast, sanctions are imposed for conduct occurring before the court, no hearing is necessary since the court "had already observed those elements of the litigation most relevant to

the criteria for imposing sanctions." *McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C. Cir. 1986); *see also Pigford v. Veneman*, 307 F. Supp. 2d 51, 58 (D.D.C. 2004) ("As for a hearing, due process does not require a hearing every time sanctions are imposed."); *Vongnaraj v. United States*, No. Civ. A. No. 91-1462, 1992 WL 84893, at *2 (D.D.C. Apr. 7, 1992) (hearing unnecessary prior to imposition of Rule 11 sanctions).

To shoehorn this case under *Chambers*, the plaintiff argues that the Court's decision to impose sanctions was based on "conduct that occurred in [sic] outside of this litigation." Pl.'s Compined [sic] Reply in Supp. of Pl.'s Mot. to Vacate, Clarify, Reconsider, or Amend ("Pl.'s Reply") at 5, ECF No. 113. As support, the plaintiff points to a handful of examples in the Opinion referencing activity in other tribunals as corroborative evidence for the plaintiff's pattern of behavior before this Court, and ignores the extensive description of the plaintiff's impermissible behavior before this Court. *See id.* at 5-6. Contrary to the plaintiff's protestations, the behavior that prompted the sanction was the plaintiff's fabrication of evidence — which would be sufficient, standing alone, to justify the sanction of dismissal — his misrepresentation of facts, and his improper behavior during discovery. *See Slate*, 941 F. Supp. 2d at 46–53. These practices occurred before this Court. Therefore, no evidentiary hearing was necessary when the sanctionable behavior was observed by the Court itself.[7]

---

[7] To the extent that the plaintiff is asserting a violation of any procedural due process rights, which consist of notice and an *opportunity* to be heard, the plaintiff was on notice of the requested sanction of dismissal upon filing of the defendants' motion seeking this relief, and if the plaintiff had any right to a hearing, he waived it when he elected not to make a timely request for such a hearing in his opposition. *See* LCvR 7(f); *see also In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) ("The court may act without a hearing [to impose sanctions] if it has provided an opportunity for one but no parties in interest request it."); *Sparrow v. Reynolds*, 646 F. Supp. 834, 840 (D.D.C. 1986) (holding that a plaintiff who was "usually so zealous in asserting has rights," but who had not "asked for a hearing at which to contest the propriety" of the sanction had "waived any due process objections he might have raised to defendants' motion."); *Holley v. Guiffrida*, 112 F.R.D. 172, 174 (D.D.C. 1986) (failure to request hearing on sanctions waives any due process right to hearing). The plaintiff made a belated request for a hearing on the defendants' motions for summary judgment and dismissal, on October 23, 2012, ECF No. 101, and this was untimely. In any event, as noted by the Court in the Opinion, this hearing request was denied as unnecessary given the substantial briefing and voluminous exhibits submitted by the parties, including the exhibits with documentary evidence demonstrating by

The plaintiff finally argues that, even if a hearing were not necessary and all the facts relied upon by the Court were true, imposition "of the harshest sanction available amounts to sanctioning Plaintiff for proceeding *pro se*." Pl.'s Reconsideration Mem. at 32. Instead, he contends that "[m]onetary sanctions are more appropriate in this case than the most severe penalty of dismissal." *Id*. The plaintiff suggests that the appropriate monetary sanction "for alleged misconduct that resulted in the deposition of [a witness]" is "$661.05, the cost of [the witness'] deposition." *Id*. at 33. This suggestion underscores the "plaintiff's lack of respect for the federal judicial process," as noted in the Opinion. *See Slate*, 941 F. Supp. 2d at 51. The plaintiff has chosen in his pending motion to relitigate the same issues that arose in the plaintiff's opposition to the motion to dismiss for bad-faith conduct in litigation, s*ee* Pl.'s Opp'n to Mot. for Dismissal for Bad-Faith Conduct of Litigation at 18, ECF No. 96, and compound the insult caused by the submission of fabricated evidence by spinning yet another story to try and explain a document he "submitted … as a critical piece of evidence—indeed the only evidence that the plaintiff ever put ABC on notice of his non-affiliation with the PCC and his expectation to be paid directly for his work, prior to his attempts to withdraw any license on March 14, 2008." *Slate*., 941 F. Supp. 2d at 52. His arguments are without merit and do not warrant reconsideration of the sanction of dismissal.

### 3. The Court's Factual Findings are Supported by the Record

The plaintiff points to a number of the Court's findings, which he contends were not supported by the record, including the factual issues identified in Part III.A.2, *supra*. Pl.'s Reconsideration Mem. at 33–43. The plaintiff's arguments were considered by the Court in

---

clear and convincing evidence the fraudulent nature of the "August 21, 2006" letter. *Slate*, 941 F. Supp. 2d at 29 n. 1.

resolving the motion for summary judgment and found unpersuasive. His attempts to relitigate the issue now are impermissible under Rule 59(e). *See Messina*, 439 F.3d at 759.

The plaintiff attempts to clarify the record by submitting twenty-one additional exhibits. None of these records undermine the rationale of the Court's decision. The plaintiff has failed to present any new evidence that was unavailable for production during consideration of the dispositive motions or to demonstrate any clear error or manifest injustice stemming from the dismissal. Accordingly, the plaintiff's motion to vacate, clarify, reconsider or amend the Order is denied.[8]

### B.  Judicial Notice Is Not Warranted Or Timely

The plaintiff requests, under Federal Rule of Evidence 201, that the Court take notice of five exhibits reflecting "findings and conclusions in prior opinions by courts directly related to the allegation of discovery misconduct raised by Defendants in this litigation." Pl.'s Mem. Supp. Request Jud. Notice at 2, ECF No. 107-1. Federal Rule of Evidence 201 authorizes "[a] court [to] take judicial notice, whether requested or not of any fact that is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED.R.EVID. 201(b)-(c). This determination is left in the court's

---

[8] The plaintiff asserts related complaints about "errors arising from 'oversight or omission' in the clerk's docket management" and the record being "incomplete [] due to technical problems with the clerk's docket management system," such that "Plaintiff was unable to upload a copy of a deposition transcript and several documents turned over by Defendants during discovery." Pl.'s Reconsideration Mem. at 1. As an example, the plaintiff explains that he "attempted to attach Briana Heard's Deposition as Exhibit 30 but inexplicable the PACER system would not allow him to upload this document and a few other exhibits now attached to this motion to reconsider." *Id.* at 1 n. 1 (citing "Dkt. 95-2 at 4"). The exhibits filed by the plaintiff at this docket entry, ECF No. 95, were submitted on October 3, 2011. Thus, if the plaintiff's failure to submit this documents earlier were truly due to technical difficulties, he had plenty of time to correct the failure prior to the Court's issuance of the challenged Order. In any event, portions of the deposition of the Briana Heard submitted by the defendants were considered by the Court and referenced in the Opinion. *See Slate*, 941 F. Supp. 2d at 34 (citing Dep. of Brianna Heard at 11:2-4, 11:20-12:7, ECF No. 93-26).

discretion, but the matters to be noticed must be relevant. *Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011). The Court concurs with the defendants that the exhibits presented for judicial notice are "all irrelevant to the Court's rulings." Defs.' Opp'n Mot. Judicial Notice at 1, ECF No. 111. The reasons for the challenged Order are fully set out in the accompanying Opinion and are not dependent on the course of litigation before other courts.

Moreover, the proposed exhibits to which the plaintiff seeks judicial notice range in date from September 12, 2009 to October 14, 2011. *See* Pl.'s Decl. Supp. Request Jud. Notice, Ex. 1 ECF No. 107-3. Thus, each of these exhibits pre-date the dispositive briefing in this case and are thereby untimely. Now is not the time to request that the Court consider evidence, which was apparently available for over a year prior to the filing of the challenged Order granting summary judgment to the defendants. The plaintiff's motion to take judicial notice is therefore denied.

## C.    The Defendants' Bill of Costs is Appropriate

The plaintiff's final motion opposing the defendants' bill of costs asserts that the defendants are attempting to recover fees that are impermissible under the Local Rules. *See* Pl.'s Opp'n Bill of Costs, *generally*. For example, the plaintiff opposes the recovery of costs for "litigation support, additional video hours, video archiving, video set-up, archiving, custom tabs, waiting time, delivery, summary, additional condensed transcripts, expedited services, scanning OCR, CD ligation packages, overnight delivery, and MPEG video." *Id*. at 1. The defendants counter, however, that, with the exception of one claimed cost, the costs to which the plaintiff objects are not costs that the defendants are seeking to recover. *See* Defs.' Reply in Supp. of Bill of Costs at 1, ECF No. 112. Thus, all but one of the plaintiff's objections may be disregarded as simply irrelevant. The one exception is the submitted $507.60 cost for the original and copy of a court reporter's transcript of the deposition of Douglas Brackett ("Brackett Deposition"), who was designated as an organizational witness to testify on certain topics at a single Rule 30(b)(6)

deposition. The plaintiff objects to this cost on the ground that this deposition was "not used on the record." Pl.'s Opp'n Bill of Costs at 1. The plaintiff is incorrect regarding the Brackett Deposition. As the defendants point out, this deposition was put in the record and cited as an exhibit during the briefing of motions adjudicated by the Court. *See*, ECF No. 69-8 (excerpts from D. Brackett testimony filed on May 31, 2011); ECF No. 76-6 (excerpts from D. Brackett testimony filed on June 15, 2011).

In sum, the plaintiff has not convincingly presented any impermissible costs claimed. Accordingly, the defendants' Bill of Costs is granted.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's pending motions for reconsideration, to take judicial notice and to deny the defendants' Bill of Costs are DENIED. An appropriate order consistent with this Memorandum Opinion will be entered.

Date: December 20, 2013

_____
BERYL A. HOWELL
United States District Judge